IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

RECEIVED

APR 0 3 2013

THOMAS G BRUTON
CLERK, U S DISTRICT COURT

| | |
|---|---|
| WAVERY D. TOMPKINS | ) |
| Plaintiff, | ) |
| v. | ) |
| 19th JUDICIAL CIRCUIT COURT OF LAKE COUNTY, | ) |
| IL., ET. AL., LAKE COUNTY STATES ATTORNEY, ET. | ) |
| AL., LAKE COUNTY SHERIFF'S DEPARTMENT, ET. AL., | ) |
| LAKE COUNTY CIRCUIT COURT CLERKS' OFFICE, ET. | ) |
| AL., WAUKEGAN, IL. POLICE DEPT., ET. AL., JUDGE | ) |
| MATTHEW F. KENELLY, ATTY. NEIL TOPPEL, ATTYS. | ) |
| MARGARET M. DUNCAN, KEITH M. STOLTE, REV. | ) |
| EUGENE ROBERSON, MS. TINA Y. WOFFORD. | ) |
| Defendants | ) |

ORIGINAL

13cv2515
Judge Edmond E. Chang
Magistrate Judge Daniel G. Martin

VERIFIABLE COMPLAINT OF A CIVIL CONSPIRACY

COMPRISED OF FRAUDULENT ACTIVITY OF THE COURT

Wavery D. Tompkins, (Plaintiff), currently of a pro/se status, complains against State entities, and

Individuals, of Illinois who participated by means of having the Plaintiff repeatedly arrested, maliciously

prosecuted, and discriminatorily prejudiced, in a conspiratorial, fraudulent, and corrupt manner.

JURISDICTION AND VENUE

1. This Court has Jurisdiction under the following: 18 USC 241, 18 USC 242, 18 USC 245, 18USC
   1505,

   18 USC 1512(d), 18 USC 1028, 18 USC 2071, 28 USC 1343, 28 USC 1367, 42 USC 1982, 42 USC

   1983, 42 USC 1986, 42 USC 1988, 42 USC 3631.

1

2. Venue is appropriate under 28 USC 1391, 28 USC 1367, 28 USC 1332.

PARTIES

3. Plaintiff is an African American (Black), Male recently residing in Lake County, IL., Cook County, IL., and currently residing in Perry County, AL.

4. The 19th Judicial Circuit Court is the main law enforcement entity in Lake County, IL., of the far Northeastern District of the State, located at 18 S. County St. Waukegan, IL., and ...

5. Donald Geiger, (Individually, and in his own capacity, under color of law), is/was a Judge of the 19th Judicial Circuit Court of Lake County, IL., believed to reside, or have resided within Lake County, Geiger is a White Male.

6. Raymond McKoski, (Individually, and in his own capacity under color of law), is/was a Judge of the 19th Judicial Circuit Court of Lake County, IL., believed to reside or have resided within Lake County, McKoski is a White Male.

7. Joseph Waldeck, (Individually, and in his own capacity under color of law), is/was a Judge of the 19th Judicial Circuit Court of Lake County, IL., believed to reside, or have resided within Lake County, Waldeck is a White Male.

8. Michael Betar, (Individually, and in his own capacity under color of law), is/was a Judge of the 19th Judicial Circuit Court of Lake County, IL., believed to reside, or have resided within Lake County, Betar is a White Male.

9. Wallace Dunn, (Individually, and in his own capacity under color of law), is/was a Judge of the 19th Judicial Circuit Court of Lake County, IL., believed to reside, or have resided within Lake County, Dunn is a White Male.

10. James Booras, (Individually, and in his own capacity under color of law), is/was a Judge of the 19th Judicial Circuit Court of Lake County, IL., believed to reside, or have resided within Lake County, Booras is possibly a Hispanic Male.

2

11. Lake County State's Attorneys' Office 18 S. County St. Waukegan, IL., is an office of the State of Illinois that initially brings charges, and enforces prosecution of those charges for the 19th Judicial Circuit Court of Lake County, IL., and …

12. Michael Waller is/was the Head Official of said office, responsible for assigning assistant State's Atty's, (ASA's) to after a decision is made to prosecute one, (Individually, and in his own capacity under color of law), is believed to reside, or have resided within Lake County, Waller is a White Male.

13. Jennifer Willer, (possibly Waller), (Individually, and in her own capacity under color of law), is/was an ASA for the 19th Judicial Circuit Court of Lake County, IL., is believed to reside or have resided within Lake County, Willer is a White Female.

14. Lake County Circuit Court Clerks' Office 18 S. County St. Waukegan, IL. Is responsible for keeping all records, court dates, totaling and collecting fines for cases and Probate means, etc., and …

15. Michelle Ranaldo, (Individually, and in her own capacity under color of law), is/was a clerk of the 19th Judicial Circuit Court of Lake County, IL., and is believed to reside, or have resided within Lake County, Ranaldo is a White Female.

16. Chris Narbone, (Individually and in her own capacity under color of law), is/was a court clerk of the 19th Judicial Circuit Court of Lake County, IL., is believed to reside or have resided within Lake County, Narbone is a White Female.

17. Lake County Sheriff's Department at 25 S. MLK Jr. St. Waukegan, IL./ Courthouse Security. Enforces violations within the County's boundaries that may be considered 'out of police jurisdiction', provides security to courthouse and courtrooms of the 19th Judicial Circuit facilities and branches throughout Lake County, IL. The Babcox Justice Center is housed within the same structure, and …

18. Jeff Lowery is/was a Sgt. Of Court Security for the 19th Judicial Circuit Court facility at 18 S. County St. Waukegan, IL. 60085, (Individually, and in his own capacity under color of law), is believed to reside, or have resided within Lake County, IL. Lowery is a White Male.

19. A. Evans #1104, is/was a deputy officer of the Lake County Sheriff's Department, (Individually and in his own capacity under color of law), is believed to reside, or have resided within Lake County. Evans is a White Male.

20. Thomas Struck #1784, is/was a deputy officer of the Lake County Sheriff's Department, (Individually, and in his own capacity under color of law), is believed to reside, or have resided within Lake County. Struck is a White Male.

21. James Cook, is/was a deputy officer of the Lake County Sheriff's Department, (Individually, and in his own capacity under color of law) is believed to reside, or have resided within Lake County. Cook is a White Male.

22. Waukegan Police Department 420 Robert V. Sabonjian Pl. Waukegan, IL., located adjacent to the 19th Judicial Circuit Courthouse facility, and ...

23. R. Karlstrand, is/was a Waukegan Police Dept. officer/investigator, (Individually, and in his own capacity under color of law), is believed to reside, or have resided within Lake County. Karlstrand is a White Male.

24. Timothy Zegar is/was a Patrol Officer with the Waukegan Police Department,(Individually, and in his own capacity under color of law), is believed to reside, or have resided within Lake County. Zegar is a White Male.

25. Civilian defendants named in a defamation complaint, (08L300), filed in Lake County on April 10, 2008, they are:

4

26. Rev. Eugene Roberson of First Corinthian Baptist Church at 1529 Elizabeth Ave. North
    Chicago, IL. Is believed to reside, or have resided at 5233 Conifer Ln. in Gurnee, IL. 60031
    Roberson is a AA, Black Male.

27. Tina Wofford, a member of First Corinthian Baptist Church, is believed to reside, or have
    resided at 1530 Elizabeth Ave. North Chicago, IL. 60064 Wofford is a AA, Black Female.

28. United States District Court of the Northern District of Illinois, Eastern Division, located at the
    Dirksen Federal Building 219 S. Dearborn St. Chicago, IL. 60604 (Plaintiff filed a case directly
    related to this complaint, #05CV1691) filed on March 22, 2005.

29. Matthew F. Kenelly, is/was a Judge of the United State's District Court, (Individually and in his
    own capacity under color of law), is believed to reside, or have resided within Cook County,
    IL. Kenelly is a White Male.


30. Neil Toppel of the firm Dvorak & Toppel located at 3859 W. 26th St. Chicago, IL., is/was an
    attorney appointed by the Court as counsel for the Plaintiff, (Individually, and in his own
    capacity under color of law), is believed to reside, or have resided in Cook County. Toppel is a
    White Male.

31. Margaret M. 'Peg' Duncan of the firm McDermott, Will, & Emery, located at: 227 W. Monroe
    St. Chicago, IL., (Individually, and in her own capacity under color of law), is believed to
    reside, or have resided within Cook County, IL. Duncan is a White Female.

32. Keith M. Stolte of the firm McDermott, Will, & Emery at: 227 W. Monroe St. Chicago, IL.,
    (Individually, and in his own capacity under color of law), is/was an assistant to Ms. Duncan,
    and is believed to reside, or have resided within Cook County, IL. Stolte is a White Male.

## NATURE OF THE COMPLAINT

33. The Plaintiff, currently a resident of Marion, AL., of Perry County, is a descendant of Josephine E. Smith nee Josephine E. Harper, Josephine E. Tompkins, (deceased), whom was born and raised in Marion, AL.

34. Together Plaintiff and an older brother, Robert E. Tompkins, (also born in Marion, or Birmingham, AL.), were raised in Waukegan, IL. (Plaintiff was born and raised in Waukegan, IL.), of Lake County, IL., and in Plaintiff's youth, he enjoyed being educated, and participating in various sporting activities, up to and throughout highschool.

35. Plaintiff was baptized and regularly attended church since the age of 8 years old. Plaintiff has no known 'criminal, or mischievous' accusations or convictions as a juvenile.

36. Plaintiff joined the U.S. Army on November 24, 1981, and unfortunately after having a stellar basic training, and communications training, upon arriving at Ft. Campbell, KY. For his first duty station assignment, the Plaintiff was not correctly welcomed, or orientated into his duty unit, (the ordinary operating battalion was on an approximate 1 month field exercise), nor instructed on what was expected of him in day to day functions, Plaintiff received no orientation process whatsoever.

37. And when Plaintiff returned to his dorm room one morning after completing a morning detail, was sought out by ranking interim sergeants of the company, and once found to be in his dorm room was imposed upon by said officials whom entered with a pass key, Plaintiff was berated, accused of insubordination, and disrespecting a superior.

38. Plaintiff received what he believed to be an unwarranted court martial after leaving 'CCF, (Correctee Confinement Facility), and returned to his dorm area, never leaving the base, where this correctional facility was located.

6

39. In the Court Martial, after being found guilty of the unfounded charges of being 'awol', Plaintiff was deprived of receiving his E-2 rank, one month's pay, and sentenced to the United States Army Retraining Brigade, (USARB), in Ft. Riley KS.

40. Throughout Plaintiff's evaluation process, Plaintiff determined that the particular military unit he was assigned to, appeared to be persistent in working against his logical, and good intent form of character, treating him unfairly.

41. In Plaintiff being afforded no representation during the court martial procedure, Plaintiff felt that under then current circumstances, that rather than accept an offer to be transferred on assignment elsewhere in the U.S., that Plaintiff opted instead to voluntarily withdraw from what Plaintiff initially was an excellent opportunity to serve his country, and inevitably advance accordingly, as Plaintiff's above average abilities tended to dictate.

42. On or about September 7, 1982, Plaintiff chose to receive an offer of an 'OTH', (Other than honorable) discharge, and signed the form DD214 that at the time did not give reasoning for this type of discharge, which later indicated reasoning as: 'Frequent involvement in incidents of a discreditable nature with civil or military authorities.'

43. Plaintiff asserts that being discharged in this particular manner, unwittingly 'opened the door' to the Plaintiff further being discriminated against, deprived of any and all constitutional rights, preventing him from partaking in and advancing in society in such a manner, he chose to return to Waukegan, IL. After his discharge.

44. From and throughout his period of return home, where his elderly mother, and an older brother resided, Plaintiff attempted to reorient himself with the issues of racial discrimination, employment discrimination, alcohol, and drug abuse within the minority neighborhoods, and attempted to recover from these unfortunate realities by frequenting predominantly 'White' oriented drinking establishments, and other entertainment entities

with the hope of gaining leads for obtaining meaningful employment, furthering his education, or gaining a circle of supportive associates, meeting a love interest, or potential profitable employer.

45. Plaintiff was able to obtain various mediocre employment opportunities, despite feeling that he was not getting a fair shake for what his overall abilities dictated. When these subjects would come up in conversation at these settings, seemed to drum up guilt in many whom otherwise respected his opinions, and enjoyed his conversation, and over a short period of time, the Plaintiff became well known to many throughout the Lake County IL. Area.

46. Plaintiff believes and expresses that as a result of many believing the Plaintiff to be accurate in his assessment of what amounted to theories of blatant racism toward many whom seemed indifferent to his accurate analogies.

47. Plaintiff's opinions of these situations caused him initially to become unwelcome in many of the establishments that he had regularly frequented, and found that some would accuse him of starting trouble, and call the police on him, causing him to develop a reputation of being disruptive, and antagonistic toward unsuspecting individuals.

48. As a result, Plaintiff believes that due numerous court appearances involving these unfounded incidents that Lake County, IL. authorities, (with initial accusations being derived of the Waukegan area), placed the Plaintiff under scrutiny, or surveillance without the Plaintiff's knowledge, resulting in more arrests.

49. Plaintiff communicated with many within the community, attempting to give helpful advice, and gain a sense of how others felt in regards to many of these issues, prompting many to consider trying religion, as a release, and attempted to cause others to become more spiritually enlightened, in Plaintiff attempting to help others of his culture, he was met with great disdain.

50. Upon the Plaintiff and his older brother losing the rental rights to the only home that the Plaintiff ever resided in, after the passing of their mother in 2000, around 2005, after being denied an offer to rent with the option of purchasing, (case #'s 05CH1345/ 05LM1803), by the landlord, Plaintiff and his brother were forced to move from the property, despite Plaintiff bringing issues of the condition of the home in a complaint.

51. Circumstances escalated to a point to where the Plaintiff was being harassed and accused of everything from intimidation, to acts of bodily harm, sexual harassment, and numerous acts of disorderly conduct. Attempts by the Plaintiff to motion to have evidentiary hearings held, the venue changed, charges dropped, or certain Judges substituted, were constantly denied, resulting in some instances, where Plaintiff's property was tampered with, and at least one case removed from his property, set of approx. 20 keys, and having his vehicle sabotaged as a result.

52. Plaintiff relocated to the Cook County area, after many attempts to relocate within Lake County were unethically insulting to what Plaintiff believed, and the way Plaintiff had become accustom to living. In about February of 2010, through communication with Lake County court authorities for alleged ongoing traffic infraction accusations, false accusations began surfacing in the Cook County, IL. area.

53. Filing this complaint will show how, why, and under what manner of terms Plaintiff has repeatedly had his overall good intentioned character attacked and damaged so severely that he seeks to have closure, and make an earnest attempt at showing how he has been deprived, and shown to be a liar, and one of a mischievous disposition.

STATEMENT OF CLAIM

9

54. The Plaintiff brings particular attention to alleged misdemeanor charges of a disorderly, harassing, or willful intent to intimidate, or do bodily harm.

55. These unlawful arrests, which include allegations of criminal trespassing, and at least two unlawful possession charges, combine to form a pattern of unlawful arrests, detainment, and erroneous and mischievous types of allegations placed upon the Plaintiff's record of an alleged 'criminal history', indicating use of alias names, etc.

56. Listing of these initial types of arrest are the following: 88CM146, (arrest of January 17, 1988), Plaintiff arrested for defending himself against being hit by his then girlfriends' vehicle, driven by a Male Black acquaintance of hers.

57. 87CM2414, An arrest in Waukegan, IL. Plaintiff was accused of an 'aggravated assault', but in fact Plaintiff assaulted no one, but himself was assaulted, and unlawfully arrested, after receiving treatment for a laceration to his head. It is indicated Plaintiff gave an alias of 'Weaver', this charge was dismissed on November 17, 1987. On September 24,1988, Plaintiff arrested on a disorderly conduct/criminal damage in Waukegan, IL. On December 23, 1988 one allegation was dismissed.

58. On January 7, 1989 Plaintiff was arrested in Waukegan, IL. for an alleged 'battery', indicating Plaintiff used an alias, (case 89CF234), Initial felony charge was reduced to an alleged misdemeanor, Plaintiff was ordered to pay $100.00, and sentenced to a probationary term.

59. (91CF438), On February 21, 1991, Plaintiff was arrested in Waukegan, IL. and charged with possession of a controlled substance/ unlawful possession of cannabis/ and disorderly conduct a Two of the three charges were dismissed on April 23, 1991, It was indicated that Plaintiff gave an alias name at the time of his arrest.

60. On June 7, 1992, Plaintiff was arrested by the Waukegan Police on an alleged trespassing. On June 22, 1992, (case 92CM2749), was dismissed.

61. On January 23, 1993, Plaintiff was arrested for an alleged criminal trespass. Case (93CM326), was dismissed on October 27, 1993.

62. On March 10, 1993, Plaintiff was arrested in Waukegan, IL. Plaintiff was arrested and charged with an alleged criminal trespass/ criminal damage/ and battery. Case (93CM1064), on October 27, 1993, two of the three charges were dismissed. It is alleged Plaintiff gave an alias name when arrested.

63. On May 22, 1993, Plaintiff was arrested at the Grand Bowling alley, in Waukegan, IL., Plaintiff was charged with an alleged 'criminal trespass'. Charges were dismissed on October 27, 1993. Plaintiff was alleged to have given an alias name at time of arrest, of (case #93CM2253).

64. On August 2, 1993, Plaintiff was arrested in Waukegan, IL. For allegedly resisting arrest. Case (93CM3671), was dismissed on October 27, 1993.

65. On January 29, 1995, Plaintiff was arrested in Vernon Hills, IL. As he was reporting to work, and charged on an alleged criminal trespass, and possession of cannabis. Case (95CM509), had at least one of the charges dismissed on April 9, 1996.

66. On December 31, 1995, Plaintiff was arrested in Highwood, IL., and charged with an alleged unlawful possession of cannabis/ criminal trespass. Case (95CM7662), had at least one charge dismissed on April 9, 1996.

67. On October 17, 1996, Plaintiff was arrested in Waukegan, IL. And charged with an alleged criminal trespass, and resisting arrest. Case (96CM6439), was dismissed on May 21, 1997.

68. On November 8, 1996, Plaintiff was arrested in Waukegan, IL. For an alleged disorderly conduct/criminal trespass. The case, (96CM6913), was dismissed on May 21, 1997.

69. On November 9, 1996, Plaintiff was arrested in Waukegan, IL. For an alleged battery/criminal trespass. Case (96CM6914), was dismissed on May 21, 1997.

11

70. On April 19, 1997, Plaintiff was arrested in Waukegan, IL. For an alleged disorderly conduct, and also alleged to have given an alias name at time of arrest. Case (97CM2519), was dismissed on February 10, 1998.

71. On June 7, 1997, Plaintiff was arrested in Waukegan, IL. For an alleged disorderly conduct. Case (97CM3656), was dismissed on April 7, 1998.

72. On January 31, 1998, the Plaintiff was arrested in Waukegan, IL. For an alleged disorderly conduct. Case (98CM861), was dismissed on June 4, 1998.

73. On November 1, 1998, the Plaintiff was arrested in Zion, IL. For an alleged battery/theft. On January 12, 1999 Plaintiff was found guilty in a bench trial under Judge Donald Geiger of the battery only. Case (98CM7637), was to be appealed to the appellate court, but never was.

74. On September 3, 1999, Plaintiff was arrested in Vernon Hills, IL., and charged with an alleged unlawful possession of a controlled substance/possession of drug paraphernalia/criminal trespass, listed as (case #99CM6502). On November 19, 1999, in a bench trial under Judge Raymond McKoski, the Plaintiff was found guilty of an attempted possession of controlled substance only, sentenced to drug treatment, fined, probation, and public service work hours. This is case (99CF3848), that should have never been listed as a felony. (see point # 76 below.)

75. On July 11, 1999, Plaintiff was arrested in Waukegan, IL. And charged with an alleged disorderly conduct/criminal trespass. Case (99CM4816), was dismissed on November 9, 1999.

76. Case (99CM6502) is actually case (99CF3848), and is dismissed on January 31, 2000 by Judge Raymond McKoski.

77. On June 17, 2000, the Plaintiff was arrested in Mundelein, IL. As he left an establishment called 'the Shack', and charged with an alleged DUI, by Lake County Sheriff's Deputy, A. Evans #1104, (case# 00DT2988), whom Plaintiff observed following him out of the establishment.

Deputy Evans stated to the Plaintiff, that 'He observed him weaving. On August 9, 2000,

Plaintiff was allegedly sentenced  by Judge Raymond McKoski, and once again on December

20, 2000.

78. The following are various alleged traffic infractions listed within the Plaintiff's driving

infraction history, that the Plaintiff does not readily recall: (00TR78660; 00TR78661;

00TR81776; 02TR8007; 02TR70827; and 02TR163319).

79. (03CM748) Plaintiff was arrested by warrant by Waukegan, IL. Police on or about February 4,

2003, for an alleged disorderly conduct proposed to have occurred on 'September 2003', as

indicated on the warrant.  On November 14, 2003, Plaintiff was found guilty of one of two

alleged charges in a bench trial under Judge Donald Geiger, an appeal was filed to the

Appellate court on September 10, 2004.

80. On February 13, 2003 Plaintiff was arrested on a warrant by Waukegan, IL. Police Dept.,

detained at the Waukegan Police station lockup for officers from Round Lake Beach, IL.,

whom transported Plaintiff to the Round Lake Beach, IL. Police station lockup for processing

of an alleged charge of telephone harassment, amongst other unfounded charges of this

case, (03CM956).

81. The ensuing day, February 14, 2003, the Plaintiff was transported back to Waukegan, IL., and

there remanded to the Lake County, IL. Correctional facility.  The Plaintiff was remanded

during a bail hearing when Judge Victoria Martin told a joke, and assumed that the Plaintiff

felt her joke was funny, and held him in contempt of court.

82. Plaintiff remained in custody approximately, 7-8 days, and received bond sent him from an

Aunt in California, and was released on February 20, 2003.

83. An attorney, whom at the time, Plaintiff did not know, Mr. Mike Bercos offered his services to the Plaintiff pro/bono, and on June 27, 2003 won a directed finding in a bench trial for the Plaintiff.

84. On or around March 22, 2005, the Plaintiff filed a complaint with the United States District Court, Northern Division, Eastern District, 219 S. Dearborn St. Chicago, IL., under the Hon. Matthew F. Kenelly, case# 05CV1691, in regards to this particular incident, in addition focusing on prior incidents of a similar nature, being in the form of the Plaintiff's theory of a conspiracy developing, lead Plaintiff to believe that by filing this complaint, he could have developing matters resolved.

85. After having Plaintiff's claims of a conspiratorial nature against him basically ignored, and receiving what amounted to due process violations, involving court appointed representatives/Defendants, Neil Toppel, Margaret Duncan, and Keith Stolte,  Plaintiff was unable to resolve these issues against him in a comprehensive manner at this time.

86. On dates of February 4, and January 21, 2003, plaintiff filed complaints with the Dept. of Human Rights, (#2003CF2346), with follow up on February 2, July 12, and November 18, 2003, with the IL. Judicial Inquiry Board, 100 W. Randolph St. Chicago, and July 9, November 22, 2003 with the IL. Attorney Registration and Disciplinary Commission 180 E. Randolph Dr. Chicago,IL.

87. Additionally, on March 25, 2004, Plaintiff filed a complaint with the Office of the U.S. Attorney 219 S. Dearborn St. Chicago, IL., March 26, 2004 with the U.S. Department of Justice 500 W. Madison St. Chicago, IL.

88. On March 17, 2004, Plaintiff was arrested on a warrant derived from an alleged  disorderly conduct/violation of a court order, Plaintiff was alleged to have approached and harassed the

14

alleged victim of case #03CM748, at his then current church, First Corinthian 1529 Elizabeth Ave. North Chicago, IL., this case, (04CM863), was dismissed on June 27, 2005.

89. On September 3, 2004, Plaintiff, while entering the Lake County Babcox Correctional Center for a status hearing regarding case #04CM863, was unlawfully arrested and detained of an alleged disorderly conduct at the facility, (case #04CM5533), adjacent to, and south of the main courthouse facility, taken to a 'substation' of the main courthouse by security deputy, James Cook, and while detained there, Plaintiff observed a photo, and information of him on a bulletin board, the Plaintiff had been escorted there by Deputy Cook, the Plaintiff's poster on the bulletin board, declared him to be one whom 'disturbs the peace'. Plaintiff in a hearing later on that day, was remanded to the jail by Judge Joseph Waldeck, this case was dismissed on April 1, 2005.

90. 05CH1345/05LM1803 on August 12, 2005 Plaintiff filed a complaint in the 19th Judicial Circuit to counteract an attempt from the landlord to have Plaintiff and his older brother removed unlawfully from the premises due an alleged threat made by the Plaintiff to the landlord's husband, Plaintiff's family prior, had rented the home since 1962. Plaintiff was refused an offer of renting to buy the home in 2001.

91. The landlord Ms. Wanda Wilhelm, informed the Plaintiff that he was no longer welcome to come to her home to make rent payments, indicated that they feared the Plaintiff's presence. On the date the complaint was filed, Plaintiff filed a motion requesting intervention of the matter, requesting a temporary restraining order, and preliminary injunction.

92. On August 30, 2005, a decision on the Plaintiff's motion was delayed, causing the defendants to not answer the complaint, and instead brought a complaint against the Plaintiff, therefore the Plaintiff filed a motion for 'substitute of Judge, and/or change of venue'.

15

93. On September 6, 2005, the Chief Judge Re-assigned the case to Judge Stephen Walter, whom recused, and case assignment went to Judge Raymond McKoski.

94. On September 7, 2005, Plaintiff filed a motion requesting a recusal of Judge Raymond Mckoski for cause, whom Plaintiff suspected of being 'racially biased', amongst other violations, Judge McKoski continued the date for hearing on the matter. On September 14, 2005, Judge McKoski filed an order denying the Plaintiff's motion.

95. On September 12, 2005, the Plaintiff filed a letter to Judge Starck, believed to be the then Chief Judge, requesting to have 05CH1345, and 05LM1803 consolidated, and the venue changed to insure the Plaintiff of a fair trial. The only indication of what the Plaintiff understands in how these cases were culminated is, an eventual dismissal of 05CH1345, and an award of 05LM1803 for the defendants. An order was entered on September 9, 2005, that is illegible by Judge Michael Fritz.

96. On the following dates, the Plaintiff attempted to file complaints with the respective agencies: January 27, 2004 at the Office of the IL. Atty. General, 100 W. Randolph St., Chicago, IL., December 23, 2005 to the Congress of the U.S., and on November 11, 2004, to the Dept. of Human Rights Chicago, IL.

97. On December 26, 2007, (case# 07CM8880), the Plaintiff entered the Lake County Circuit Court Clerks' Office, and was attempting to file a motion to withdraw an alleged seatbelt infraction, and was arrested after clerk Michelle Ranaldo summoned Deputies, and alleged that the Plaintiff threatened to 'burn down' the clerks' office. Sherriff Deputy Dave Saborin responded, and without question or warrant placed the Plaintiff under arrest. Plaintiff was remanded for what amounted to about 12 days before being released on bond on January 7, 2008, when the Plaintiff discovered two (2) sets of keys missing, and sabotage damage to a vehicle left on a downtown St. of Waukegan, IL. At the time of Plaintiff's arrest.

16

98. On January 17, 2008, the IL. Chapter of the F.B.I. 2111 W. Roosevelt Rd. Chicago, IL. Is where Plaintiff went to file an complaint to all that had transpired up to this point. (2008-9063).

99. On April 15, 2008, Plaintiff was arrested in Gages Lake, IL. As he proceeded to take a female acquaintance whom he had just met, home from the C'mon Inn on Rt. 45, by the Lake County Sherriff's Department on an apparent warrant. The male Deputy questioned the Plaintiff's passenger, whom later informed him that the Deputy told her that the Plaintiff had a warrant for drug possession, and asked if any drugs were in the Plaintiff's vehicle.

100. The Deputy forced the Plaintiff to allow his vehicle to be impounded, and was transported to the Lake County Jail in Waukegan, IL. The Plaintiff found he was alleged to have threatened a Lake County Circuit Court Clerk, Ms. Chris Narbone, (case #08CM2130), had made the allegation that the Plaintiff made the threat to a co-employee of hers. In a bond hearing the next day, the Plaintiff was forced to bond out for the amount that he had in his property. This case was dismissed August 8, 2008, and is purported by the Plaintiff to be directly related to case 07CM8880.

101. The following are alleged traffic infractions, and at least one civil case: On December 8, 2007, the Plaintiff was ticketed in Waukegan,IL. For an alleged speeding/seatbelt violation, pulled over at E/B 120 off of N/B McAlister Ave. Waukegan Police Officer, Zegar cited the Plaintiff for the alleged infractions,(case #07TR179306,(307), Plaintiff's motions in the coming months were all denied.

102. Two and a half (2 1/2 ) years later, on May 24, 2010, Plaintiff was found guilty of one of the alleged infractions in a jury trial, under controversial Judge, Michael Betar, denied the Plaintiff to present his defense, and signed no written order after the verdict.

103. On August 19, 2008, the Plaintiff filed a defamation complaint against Rev. Eugene Roberson, and then co-member, Ms. Tina Wofford, and at least two North Chicago, IL. Police

17

officers. In this case, (08L300), circumstances of what was rumored to have occurred in case #03CM748, was somehow construed to make it appear as if the Plaintiff had a motive for allegedly committing a similar harassment act against Defendant Wofford. Judge Raymond McKoski, whom is controversial to the Plaintiff, presided over this case, and the Plaintiff's case was dismissed by Judge Wallace Dunn on August 3, 2009.

104.    On October 22, 2008, the Plaintiff was pulled over and ticketed in Waukegan, IL. By a Lake County Sheriff Department's Deputy, Thomas Struck, on W/B Washington St., just East of McAree Rd. in Waukegan. At that time the Plaintiff was not given a specific reason of what the traffic infraction was concerning, (case #08TR150847), but the charge on the ticket alleged Plaintiff went the wrong way around a rotary island. In prior status hearings either Judge Charles Johnson, or George Strickland, allowed the charge to be amended to an 'illegal lane usage', of which no specific, or definitive explanation was given of what occurred on that date.

105.    Various motions of the Plaintiff were denied, and in particular, a motion for a substitution of Judge, of eventual presiding Judge, Joseph Waldeck, for cause filed on February 18, 2011, and a motion for change of venue were both denied.

106.    A jury trial was held on October 18, 2011, and the Plaintiff's due process rights were continually violated, and by Judge Waldeck not allowing a transcript to be taken of the hearing, or allowing the Plaintiff to properly present his defense, or provide his evidence, Plaintiff was found guilty.

107.    The Plaintiff continued attempting to file complaints, regarding the violations committed against him to the following agencies, on the following corresponding dates:

108.    The Illinois Judicial Inquiry Board 100 W. Randolph St. Chicago, IL. On October 17, 2008, January 13, 2010, and November 3, 2011. Congresswoman Janice Schakowski, on June 15,

2012, IL. Atty., Registration and Disciplinary Commission 130 E. Randolph Dr. Chicago, IL. On

October 16, 2009, IL. Department of Human Rights on November 3, 2011, and the IL.

Secretary of State's Office 213 State Capitol, Springfield, IL., on June 26, 2010, February 8,

2011, and November 2, 2011.

109.     The Plaintiff filed an appeal on December 5, 2011, and due the Plaintiff's lack of income

status, a request for the appellate court to assist the Plaintiff with representation appointed,

was denied, leaving the Plaintiff with the consolation of presenting all aspects of what

transpired in this and the other cases, bringing forth an established pattern of intent to

conspire against the Plaintiff.

110.     On August 31, 2009, the Plaintiff was ticketed in the town of Libertyville, IL. For allegedly

'driving in the wrong lane', by the Libertyville Police Department, (case # 09TR117839),

Plaintiff filed a 'Notice of Protestation', detailing how he has been being treated by the court

system, and how he would participate in any, and all future, or potential court hearings

under protest, on June 23, 2010, after being convicted of the alleged traffic infraction of case

#07TR179306, 307 in a jury trial on May 24, 2010.  This documentation, along with denials of

numerous motions in numerous cases against the Plaintiff, would serve as evidence for

future reference.

111.     On September 9, 2010, Plaintiff was pulled over on N/B Rt. 45 in Lincolnshire, IL., by a

Lake County Sheriff's Deputy for allegedly having no brake lights. (case #10TR112642).

112.     On May 29, 2012, alleged traffic infraction cases, 09TR117839, and 10TR112642, were

consolidated and heard together by a female Judge that the Plaintiff cannot identify, and

found guilty of both charges, the Judge's signature appearing on the orders is illegible, Atty.

Lawrence R. LaLuzerne, prepared the order. An appeal regarding this case was filed on June

28, 2012.

113. The Plaintiff, whom filed numerous appeals of convictions received over the past approximate 7 years, in an effort to show a pattern developed of the manner of prosecution that the 19th Judicial Circuit Court used against the Plaintiff, although understandably, the Appellate Court formed biases against the Plaintiff, favoring the circuit court action due to Plaintiff being unable to properly, and effectively present his cases in the lower court, or the appellate court forum, the history of the Plaintiff's appeals filed to the appellate court are:

114. Circuit no. 03CM748 filed as appellate case 2-04-0599, was affirmed of the Circuit court on May 3, 2005.

115. Circuit case no. 08L300 (defamation complaint), filed as appeal case 2-09-0933, On March 10, 2010, was dismissed allegedly for lack of jurisdiction.

116. Circuit case no. 09-MR-5, filed as appellate case2-09-0610, on April 30, 2010 was dismissed in an unprecedented summary order stating: 'Plaintiff's brief ruled patently deficient'.

117. Circuit case no. 08TR150847, filed as appellate case 2-11-1253, was dismissed on October 2, 2012 for allegedly failing to comply with the court's order.

118. Circuit case nos. 09TR117839/10TR112642, both filed as appellate case 2-12-0704, was dismissed on September 4, 2012, for also failing to comply with a court order.

119. Due the Appellate Court being biased against the Plaintiff, ultimately not being willing to help him show how his rights were being violated, and in turn prejudicing him, has caused the Appellate Court to neglect to prevent an ongoing conspiracy against the Plaintiff.

120. The Plaintiff, over the last approx. 20 years, has had his inherent good nature, and good intentioned civil ethics severely damaged by the manner that he has been depicted and accused of representing himself, in turn violating his constitutional right to his pursuit of

happiness, and rights to life liberty, and property, a violation of his fourteenth amendment rights, amongst other various violations.

121.    All that the Plaintiff contends within this complaint is readily verifiable, through documentation that the Plaintiff possesses, which should match up with court records.

122.    The Plaintiff has through the grace of God, done no time in a State Institution, although he has weathered approximately 25 years of his life maligned by the Defendants named in this complaint, and many whom are not named.

123.    The Plaintiff realizes that the manner of how he has been treated, has affected his ability to focus on gaining profitable employment, hampering his ability to go into business for himself, establish meaningful and trusting relationships of a personal, spiritual, and extended family type of aspect.

124.    Plaintiff has done all he feels he has been required to do, to prove his assertions against those whom have meant to bring embarrassment, ridicule, or harm to him in some ways. Being one in his situation, Plaintiff feels he is left no other alternative than to have the proposed violations against him reviewed, identified, fairly adjudicated in accord of the law as guaranteed every citizen of these United States.

125.    The most recent of these types of incidents, which is not of public record, but involve situations of where Plaintiff would upon entering the 19th Judicial Circuit Courthouse, would be placed in a state of apprehension, by Lake County Sheriff's Deputies/Courthouse security, two at a time, would follow the Plaintiff, at close range, throughout the facility, placing the Plaintiff in scrutiny, or under surveillance, possibly as an intimidation factor, Plaintiff noticed similar situations occurring throughout the community, in shopping centers, bowling alleys, libraries, etc.

126.     On at least one occasion involving case #07CM8880, as the result of a false arrest on

December 26, 2007, at the Lake County Circuit Court Clerks' Office, Plaintiff upon being

unlawfully arrested, and taken into custody, either had keys removed from his property, or as

a result of his arrest, left his keys in the clerks' office, had someone obtain an additional set

of keys from the Plaintiff's vehicle, (1983 Chevy C-10 pickup), of which was also sabotaged.

On January 11, and 14, 2008, the Plaintiff contacted members of the Lake County Board

regarding circumstances of this incident.

127.     Additionally, upon Plaintiff, 'being forced to relocate' to Cook County, the

Evanston/Skokie, IL. Area, false and unfounded accusations resurfaced: On Saturday, May

12, 2012, Plaintiff was accused of threatening a security person at the Niles Public Library

6960 Oakton St. Niles, IL. 60714, library personnel called police on the Plaintiff. This was at

least the third such incident, one involving a situation a situation at the Skokie Public Library.

128.     On or around June 9, 2012, the Plaintiff met with United Storage Facility Manager, Ms.

Sue Harms 2484 Oakton St. Evanston, IL. 60202, where the Plaintiff had requested to meet

regarding numerous allegations brought to the Plaintiff's attention by Ms. Harms, that the

Plaintiff was harassing, and threatening other tenants of the facility. Ms. Harms eventually

decided against getting Police involved, but did not elaborate as to the origin of the false

accusations, after the Plaintiff mentioned the situation at the Niles Public Library.

129.     These incidents demonstrate the numerous involvements that are undocumented, how

far the conspiracy has followed the Plaintiff, initiated most likely by personnel of the 19th

Judicial Circuit whom kept record of where Plaintiff would be located, through the

identification of his 'old' pickup truck, and correspondence information from the Plaintiff

regarding the then pending cases.

130.     Filing of this complaint shall possibly take place sometime in March of 2013, God willing, and copies shall be sent to all entities throughout the state, that the Plaintiff deems necessary, and at least three institutions of these United State's of America.

131.     Unfortunately to the plaintiff, regarding his particular situation, there seems to be an overwhelming form discrimination. The fact that the Plaintiff was continually discriminated against, and denied rights afforded of other nationalities, primarily due that Plaintiff is Black, is quite disturbing to him.

132.     The Plaintiff feels he does not fit a persona of one in dire straits, or desperate to survive, and appearing willing to do anything, legal, or illegal to survive, for Plaintiff feels that his fervent belief and faith in the Lord, will see him through.

133.     Therefore, Plaintiff had his opinions, thoughts, and purposes of intent, misconstrued, ignored, and disregarded, placing the Plaintiff in a position that did not reasonably allow him to be logically forthright, and assertive enough to express himself in an honest and ethical manner.

134.     The Plaintiff feels, and can demonstrate that this blatant attack upon his person, has taken place against him intentionally, and directly feels responsible for not attempting to address matters with the help of professional counsel, though Plaintiff's various hardships, that he has managed to weather did not allow him to address theses issues more readily.

135.     And the Plaintiff, whom by no means is even close to being a licensed attorney, was hindered of being able to fully express himself, and reasonably present his defense to the outrageous allegations that he has been accused of, depriving him of due process rights, that would show all of his claims to be factual.

136.     The Plaintiff finds himself in this situation virtually due to his inability to gain profitable employment, that he may in most cases be overqualified for, due his 'alleged criminal

history', that primarily exist due the very forms of conspiracies set forth within this complaint. Many parties, many of whom are not named, became co-conspirators without knowing, basically because they had no knowledge of the Plaintiff's alleged 'criminal history'.

137.     The Plaintiff will show through a juried proceeding, how a pattern has developed, how all cases, and unfounded accusations are somehow relative to the situation, and how convictions of these accusations were manifested through corrupt, immoral, and unethical means of deprivation of the Plaintiff's civil, constitutional, and due process of law rights.

## COUNT I

### VIOLATION OF THE PLAINTIFF'S 1ST,

### AND 4TH AMENDMENT CONSTITUTIONAL RIGHTS.

138.     Plaintiff restates and realleges paragraphs 1 through 78 as if fully stated herein.

139.     As a direct and proximate result of the 19th Judicial Circuit Courts' officials, in conjunction with named defendants' conduct within communities of the surrounding Lake County, IL. area. Conduct in addition, on the part of the IL. Northern District, and Appellate Courts 5th, have caused the Plaintiff to be placed under a state of apprehension, minus any showing of probable cause, reasonable willful intent on part of the Plaintiff to have committed, or be in act of committing the alleged 'crimes' the Plaintiff was accused of, unlawfully arrested for, or convicted of.

140.     Therefore count 1 constitutes a violation of 18 USC 241, being of an ongoing conspiracy in nature against the Plaintiff, allowing the 'alleged developing reputation' of the Plaintiff to be construed as some type of motive or apparent mental disorder.

## COUNT II

24

CONSPIRACY TO DEPRIVE THE PLAINTIFF OF

PRESENTING EXCULPATORY TESTIMONY AND/OR EVIDENCE.

141.    Plaintiff restates and realleges paragraphs 1-78, 138-140, as if fully stated herein.

142.    As a direct and proximate result of Defendants' conduct above, potentially unsuspecting establishment owners, property owners, renters, or welfare tenants, are amongst some of the witnesses proposed to being persuaded to falsely accuse, and or testify against the Plaintiff.

143.    Conduct of this nature against the Plaintiff constitutes a violation of 18 USC 1505, and violations of the Plaintiff's First, Fourth, Sixth, Eighth, and Fourteenth Amendment Rights to the Constitution of these United States of America.

COUNT III

VIOLATION OF 18 USC 1028 (d)(5)(A)

144.    Plaintiff restates and realleges paragraphs 1-78, 138-143, as if fully stated herein.

145.    In various arrests of the Plaintiff, some officers listed the Plaintiff as 'also being known as' Waver, Weaver, Waverly, or Randy Tompkins, causing an implication that the Plaintiff had a motive to use an alias, as one whom might attempt to be deceptive, in an attempt to conceal his real identity, for 'criminal purposes', despite the fact that Plaintiff has, and always carries current proper identification at all times.

COUNT IV

VIOLATION OF 18 USC 245 (2)(f)

146.    Plaintiff restates and realleges paragraphs 1-78, 138-145, as if fully stated herein.

146.    Violation against Plaintiff because of his race and activity as a patron in various public
        establishments within and throughout communities within Lake County, IL., where Plaintiff of
        numerous unfounded allegations, and arrested as a result.

147.    A violation of the Plaintiff's First, Sixth, Ninth, and Fourteenth Amendment rights to the
        Constitution of these United States of America.

## COUNT V

### IN VIOLATION OF 18 USC 2071

148.    Plaintiff restates and realleges paragraphs 1-89, 138-148, with specification of
        paragraphs 79-89.

149.    The Plaintiff claims deprivation or concealment of forms of prosecution by corrupt
        means, in addition, concealment of evidence, documents, information, or testimony that
        would serve to exonerate the Plaintiff of the alleged 'crime', he is accused of. Conduct often
        committed under color of law, regarding circumstances of this complaint.

150.    Additionally, in particular, paragraphs 150 and 151 represent each and every
        controversial incident, or case of violations of a legal nature within this whole complaint, that
        Plaintiff had been aware of, but was powerless as counteract these violations, which also
        include a violation of 18 USC 242, and violations of the Plaintiff's Sixth Amendment Rights.

## COUNT VI

### IN VIOLATION OF 42 USC 1982

151.    Plaintiff restates and realleges paragraphs 1-96, with specification on paragraphs 90-96.

152.    The Plaintiff asserts circumstances directly related to paragraphs 50-53, involving cases
        05CH1345, and 05LM1803. This situation added to the major mental and emotional anguish

that the Plaintiff and his older brother experienced as a result. Additionally, a violation of 42

USC 3631 is appropriate under the elements of what transpired throughout these two cases.

This situation brought about much mental and emotional anguish for the Plaintiff and his

older brother. Additionally, a violation of 42 USC 3631 is appropriate under this situation

described above.

## COUNT VII

### IN VIOLATION OF 42 USC 1985.

153.     Plaintiff restates and realleges paragraphs 1-100, 132-153, with specification on

paragraphs 97-100.

154.     Plaintiff brings attention to these arrests as the result of alleged accusations made by

the Plaintiff toward at least two clerks, Ms. Michelle Ranaldo, and Ms. Chris Narbone, whom

is responsible for the April 15, 2008 arrest.

155.     Neither named Defendant came forth at any time in support of their accusations made

against the Plaintiff, at any time prior to the dismissal of both cases. Add to the above listed

violation, 18 USC 1512 (d), which also constitutes a violation of the Plaintiff's Sixth

Amendment Rights to the Constitution of these United States of America.

## COUNT VIII

### VIOLATION OF 42 USC 1986.

156.     Plaintiff restates and realleges paragraphs 1-103, with specification on paragraphs 84,

85, 90-95, and 103.

157.     In the Plaintiff doing what he needed to, in filing these complaints, Plaintiff presented an

opportunity to legal officials to prevent furtherance of an ongoing conspiracy.

158.     In addition this particular part of this complaint warrants a violation of 42 USC 1988, in

regards to paragraph 103.

COUNT IX

IN VIOLATION OF 42 USC 1983.

159.     Plaintiff restates and realleges paragraphs 1-159, with some specification on paragraphs

104-106, and paragraphs 110-112, submits this count, that it may encompass this entire

complaint.

160.     The Plaintiff had his two civil cases filed in Lake County, IL., (05CH1345, and 08L300),

were both prematurely dismissed, and civil case (05CV1691), was filed in the IL. District Court

in Chicago on March 22, 2005, and initially was partially dismissed.  The Plaintiff was denied

court appointed representation, after two prior appointments, were deemed ineffective for

the Plaintiff.

161.     Once the last of the 'alleged criminal accusations' were no longer pending, the Plaintiff

began being beleaguered by various types of unfounded traffic infractions, specification of

paragraphs 104-106 was a situation involving violations that culminated the Plaintiff's theory

of the conspiracy, that to date, still exists, as an ongoing situation against the Plaintiff.

162.     It became obvious to the Plaintiff, how blatantly intent Judge Waldeck became at

denying the Plaintiff anything that could be deemed fair or impartial treatment, in regards to

a showing of this case not being remotely in accord of the Plaintiff participating in an

impartial jury trial proceeding.

28

163.    The Plaintiff will cautiously take this opportunity to present every form of
documentation that the Plaintiff possesses as evidence to prove his verifiable claim against
named Defendants. All of the subsections of the Plaintiffs' Rights, in accord of the Sixth
Amendment of the Constitution of these United States of America, were violated in just this
particular case alone.

164.    In the Defendants failing to allow the Plaintiff to timely confront unfounded accusations
against him, address violations of his Rights before arrests, before and during trial
proceedings, and through the IL. Appellate Court, and IL. District Court, through numerous
motions, and requests for evidentiary hearings, 'opened the door', for the plaintiff to be
corrupted repeatedly by the system, where Defendants acted arbitrarily, discriminatorily,
and in bad faith.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Wavery D. Tompkins prays for entry of judgment in his favor and against
Defendants as follows:

a)  The basis for damages in a civil conspiracy action is the wrongful acts alleged to have been
done in furtherance of the conspiracy. Under Illinois law, parties to a conspiracy are joint
tortfeasors; their liability is joint and several.

b)  Punitive damages are recoverable for conspiracy claims under the usual standards for
recovering such damages, as in tortuous actions that occurred here as well. Punitive
damages are awarded where the Defendants' actions are accompanied by aggravated
circumstances, such as wantonness, willfulness, malice, fraud, oppression, violence, and
recklessness, demonstrating a wanton disregard of the Rights of the Plaintiff.

29

c) Elements that the Plaintiff highlights are:

    1) The seriousness of the hazard to the unsuspecting general public, arising from the Defendants' misconduct.

    2) The duration of the hazard against the Plaintiff and it's excessiveness.

    3) The total effect of punishment, penalties, long term reputational damage, emotional, physical, and psychological impairment, and suffering, disruption of personal, and professional relationships, and other injuries attributable to Defendants' unlawful conduct.

d) Awarding Plaintiff Tompkins comprehensive expungement of all accusations, arrests, traffic infractions, and criminal convictions, that are found to be erroneous, and deceptively misleading in nature.

e) Awarding Plaintiff Tompkins a cumulative sum of the total cost incurred in bringing and prosecuting this action, after an unsuccessful attempt to do so initially.

f) Awarding Plaintiff Tompkins an overall amount sufficient to him for all he has endured, particularly at the hands of those sworn to administer justice impartially, and any other and further relief as the law allows.

PLAINTIFF DEMANDS TRIAL BY JURY.

30

Dated this 21st day of March of the year our Lord, 2013.

Wavery D. Tompkins (Plaintiff)  03/29/13

(currently serving pro/se)

P.O. Box 396

c/o J.D. Harper

Marion, AL.   36756

(847) 399-0021