

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

**FILED**
DEC 16, 2013
DEC 16 2013
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

EASTERN DIVISION

| | |
|---|---|
| Wavery Tompkins | ) |
| Plaintiff | ) |
| v. | ) |
| 19th Judicial Circuit Court of Lake County, IL. | ) |
| Lake County State's Attorney's, et al., Lake | ) |
| County Sheriff's Dept., et al., Lake County | ) 13CV2515 |
| Circuit Court Clerks' Office, et al., Waukegan | ) Judge Edmond Chang |
| Police Dept. et al., Judge Matthew F. Kennelly | ) Magistrate Judge: |
| Atty. Neil Toppel, Attys. Margaret M. Duncan, | ) Daniel G. Martin |
| Keith M. Stolte, Rev. Eugene Roberson, Ms. | ) |
| Tina Y. Wofford. | ) |
| Defendants | |

## NOTICE OF MOTION

Please be advised that on Tuesday, December 10, 2013, that I, Wavery Tompkins, Plaintiff in the above listed case present the following motion in response to a 'NOTIFICATION OF DOCKET ENTRY', dismissing the Plaintiff's motion to receive relief of the Plaintiff's complaint, which was dismissed on or about September 13, 2013. By placing this motion for 'PETITION TO APPEAL', into the U.S. Mail, on this date, Tuesday December 10, 2013.

## MOTION

### PETITION FOR PERMISSION TO APPEAL

The Plaintiff this day petitions this Honorable Court's permission to appeal a notification of a docket entry that the Plaintiff received in the mail yesterday, December 9, 2013. The Plaintiff has reason to believe that he is not only entitled to Court appointed representation, but in addition is entitled to redress by the state of Illinois, in regards to, but not limited to the following reasons:

FACTS OF THE SITUATION:

Plaintiff initially filed complaint no. 05 C 1691, (in the form of a conspiracy complaint), against

Authorities, officers of the Court, and constituents within the confines of Lake County, IL. Law

enforcement personnel, whom had continually, harassed, falsely accused, detained, arrested,

1

and in some cases convicted the Plaintiff through means of a conspiratorial nature put into place approximately in the year 1990, was about when the Plaintiff first became aware that previous patterns of unprovoked harassments resulting in arrests, was the result of the intention for officials of the 19th Judicial Circuit Court to make th3e Plaintiff appear as if he were of a chronic criminal, or mischievous intellect. The 19th Judicial Circuit Court, located in Waukegan, IL., the Plaintiff's hometown, where he was born and raised, came to a head, as a result of the Plaintiff filing the above listed complaint on or about March 19, 2003. The case was assigned to Judge Matthew Kennelly, after the Plaintiff filed the complaint as the result of the Plaintiff being found not guilty of numerous outrageous, accusations being determined to be totally of a fabricated nature, involving a Round Lake Beach Kohls, and an inventory company, RGIS, that th3e Plaintiff had been hired by. The directed verdict of the case, which found the Plaintiff cleared of all accusation, circuit case(03CM956/03CM748), amongst a history of numerous unfounded allegations against the Plaintiff, should have opened the door for the Plaintiff's claim to have thoroughly been investigated, which would have in turn brought out all of the acts involving 'Fraud upon the Court', where the Plaintiff's civil, constitutional, and due process of right violations caused the Plaintiff living his life through undue ridicule, embarrassment, financial, and status depravity. By the Plaintiff having the decision of the lower court present a lead into all other relative incidents, should have been an opportunity that Judge Kennelly should have been obligated to s3ee through to the very end in a just and legally fair manner, allowing the Plaintiff all relief, and financial compensation he deserved, but instead the Plaintiff was treated by Judge Kennelly in 5the same manner as officers of the court within Lake County. In the Plaintiff receiving a menial, small claim type of a settlement, and not

2

having the revelation of all that he suffered, and endured totally investigated and revealed,

allowed for activity of this nature to continue. As a result of the continued harassments,

detainments, arrests, and eventually dismissal, that should have fallen in the Plaintiff's favor,

has caused all of the officials named within complaint no. 13CV2515, as defendants to be guilty

in the association of contributing to the furtherance of a conspiracy against Plaintiff, Wavery D.

Tompkins, and Judge Edmond E. Chang, has appeared to do his part in continuing the 'coverup'.

PROCESS OF PLAINTIFF'S SECOND ATTEMPT AT RESOLVING VERIFIABLE ACTIONS UNLAWFULLY

COMMITTED AGAINST HIM:

Complaint no. 13CV2515 was received by the United States District Court by mail apparently on

or about April 3, 2013, the complaint was complete down to every detail of how even the

Plaintiff described acts of Fraud upon the Court, naming numerous Judges of the lower Court.

Judge Chang did absolutely nothing to allow the Plaintiff each and every opportunity to present

his claim, as Plaintiff is required to do by law and in accord of the Constitution of these United

States, and without question dismissed the Plaintiff's complaint, despite numerous motions

filed by the plaintiff requesting status of his request to receive Court appointed representation,

and be allowed to file the case on an In Forma Pauperis status, and dismissed the Plaintiff's

Complaint on or about September 13, 2013. As a result, the Plaintiff filed a motion to receive

relief from the dismissal, which was post stamped on October 11, 2013.

THE QUESTION ITSELF:

The Plaintiff questions this Honorable Court on how it plans to resolve this issue, short of the

state devising a way to possibly attempt to (murder) the Plaintiff. All of the evidence is readily

verifiable, and ready for presentation. The Plaintiff solicits this Court to find an ethical way of

3

mediating this situation, that the Plaintiff may receive all compensation he is due in accord of law.

RELIEF SOUGHT:

The Plaintiff is requesting that this case be reopened, he receive Court appointed, effective representation, have his claims thoroughly investigated, have defendants named, and found to be a contributor, properly penalized in accord of law, and that Plaintiff may have all accusations, convictions, and driving related infractions totally expunged from his record, and that he be compensated all that he is due in accord of law.

REASON APPEAL SHOULD BE ALLOWED:

Basically, all that the Plaintiff has alleged is verifiable, he only wants an ample opportunity in front of a jury to present his evidence that the case, that has been ongoing for a number of years, will stand to show how the very Jurist put in place to correct situations of this nature, have failed Plaintiff Tompkins through their fraudulent activity of the Court, further depriving him of his right to his pursuit of happiness, as guaranteed under the Constitution of these U.S. of America.

PLEASE SEE ALL ATTACHED COPIES.

PROOF OF SERVICE AND NOTICE OF FILING

Let it be known that on this day, Tuesday, December 10. That I shall place said documentation: A copy of this petition,(2), and enclosed attached copies, in support of said petition, including copies of orders received to: The 19th Judicial Circuit Court Clerks Office 18 N. County St. Waukegan, IL. 60085, by placing said documentation into the U.S. mail by the end of this dates day.

In addition, I, the Plaintiff shall mail two (2) copies of said documentation to the United States District Court Clerks' Office located at: 219 S. Dearborn St. Chicago, IL. 60604 on this day, Tuesday, December 10, 2013, from a United States Post Office by the end of the day.

In closing the Plaintiff prays that the process of the Illinois Appellate Court runs it's course through it's investigation process, and renders all in accord of law that they are obligated by and under the Constitution of these United States of America.

By: _____

Wavery D. Tompkins                          Wavery D. Tompkins (Unrepresented Plaintiff)

P.O. Box 396

Marion, AL. 36756

(847) 399-0021

Case: 1:13-cv-02515 Document #: 17 Filed: 12/06/13 Page 1 of 1 PageID #:78

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 5.1.1
### Eastern Division

Wavery D. Tompkins

                               Plaintiff,

v.

                                                      Case No.: 1:13−cv−02515

Matthew F. Kennelly, et al.                                        Honorable Edmond E. Chang

                                Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, December 6, 2013:

       MINUTE entry before the Honorable Edmond E. Chang: Plaintiff's motion to vacate judgment [15] is denied. Plaintiff captions the motion as a "Rule 60" motion. None of the grounds in Rule 60(b) is satisfied by the content of the motion. If anything, the current motion is in line with the nature of the claims and allegations, which were dismissed as frivolous and for failure to state a claim, see R. 13. To the extent that Plaintiff could have filed a Rule 59 motion to vacate the judgment, it was due within 28 days of the entry of judgment. Judgment as entered on 09/13/2013, so 28 days would be October 11, 2013. Three days are added under Rule 6(d), so the motion would have been due on October 14−−−but that was a federal holiday, so the motion was due on October 15. The motion was received by the Clerk's Office on October 16, 2013. In any event, if it were a timely Rule 59 motion, the Court would deny that motion as meritless, again because the motion does not identify a flaw in the original order. Mailed notice(slb, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov.*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WAVERY TOMPKINS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 02515 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| 19th JUDICIAL CIRCUIT COURT OF | ) | |
| LAKE COUNTY, ILLINOIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Wavery Tompkins filed this suit against 25 various defendants, including the Lake County Circuit Court and judges and clerks of that court; the Lake County State's Attorney's Office and a state prosecutor in that office; the Lake County's Sheriff's Department and deputies in that department; Waukegan police officers; two members of a church in North Chicago; and the United States District Court for the Northern District of Illinois and a judge of that court. Tompkins is representing himself. Among other things, he has filed a motion to proceed *in forma pauperis*. R. 4. For the reasons explained below, the motion is denied.

Because Tompkins is seeking *in forma pauperis* status, he is governed by 28 U.S.C. § 1915(e)(2)(B), which provides for the dismissal of "frivolous" claims, § 1915(e)(2)(B)(i), *see Vey v. Clinton*, 520 U.S. 937, 937 (1997), as well as complaints that fail to state a claim, § 1915(e)(2)(B)(ii), *Jaros v. IDOC*, 684 F.3d 667, 669 n.1 (7th Cir. 2012); *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999). Section 1915(e)(2) applies to all litigants who seek to proceed *in forma pauperis*, not just prisoners. *See Vey*, 520 U.S. at 937 (denying *in forma pauperis* status to file certiorari petition from appeal applying § 1915(e)(2)(B)(i) to non-inmate); *Jaros*, 684 F.3d at 669 n.1 (explaining that § 1915(e)(2) screening applies to non-prisoner suits); *Rowe*, 196 F.3d at 783; *McDowell v. Eden*, 2011 WL 196937, *1 (N.D. Ill. Jan. 20, 2011). In addressing any *pro se* litigant's complaint, the Court must construe the complaint liberally. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). If there is an arguable basis for a claim in fact or law, then leave to proceed will be granted. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). But dismissal of the complaint is the proper course where it is clearly baseless or fanciful, *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992), or fails to state a claim, § 1915(e)(2)(B)(ii), or seeks monetary damages against a defendant who is immune from such damages, § 1915(e)(2)(B)(iii).

The complaint contains 164 paragraphs, and goes back in time to around 1988. *See* R. 1 ¶ 56 (this is the first arrest of which Tompkins complains; the complaint actually mentions events going back to 1982). As best as can be discerned, the complaint has a few sets of allegations; they do not all tie together, at least not directly. First, it appears that Tompkins believes he has been falsely arrested, several times, by various police officers and Sheriff's deputies, and occasionally prosecuted by the Lake County State's Attorney's Office. *Id.* ¶¶ 54-80, 110, 111. For one of these arrests, Tompkins filed a civil rights lawsuit in the United States District Court for the Northern District of Illinois. This is a second set of allegations. The federal case was assigned to Judge Matthew Kennelly. *Id.* ¶ 84. Tompkins believes the attorneys appointed to represent him ended up conspiring against Tompkins. *Id.* ¶ 85-86.

In another set of allegations, Tompkins filed a lawsuit in Lake County Circuit Court against his landlord in August 2005. *Id.* ¶ 90. The landlord said that she "feared the Plaintiff's presence." *Id.* ¶ 91. Tompkins alleges that the state judges committed various errors, ending in entry of judgment for the defendants whom Tompkins had sued. *Id.* ¶ 95. There is also a set of allegations stemming from what Tompkins says is defamation committed by two members of a church. *Id.* ¶ 103. Tompkins apparently filed a state-court defamation claim (and perhaps two), which was dismissed. *Id.* ¶¶ 103, 115.

On these allegations, Tompkins assets nine counts. Before discussing those counts, the Court pauses to explain that, because on the Court's colleagues is named in the complaint, the Court did consider whether recusal was necessary. Under the applicable federal statutes, 28 U.S.C. §§ 144 and 455, and the Judicial Code of Conduct, it is permissible to rule on a complaint "if the litigation is patently frivolous, or if judicial immunity is plainly applicable." *See* Judicial Code of Conduct Advisory Opinion No. 82 (available at www.uscourts.gov/RulesAndPolicies/Codes of Conduct.aspx). As explained below, this case is frivolous both in all respects and as to the specific claim against Judge Kennelly, both on implausibility and immunity grounds.

Turning to the individual counts, Count One purports to allege a violation of 18 U.S.C. § 241 (deprivation of constitutional rights), a federal criminal statute, which cannot be enforced civilly by Tompkins. Likewise, Count Two alleges that Defendants' conspired to falsely accuse or testify against Plaintiff, which the complaint says is a violation of 18 U.S.C. § 1505 (obstruction of justice). Again, that is a federal criminal statute that Tompkins cannot enforce in a civil action. To the extent that Tompkins is trying to allege a 42 U.S.C. § 1983 (or *Bivens* versus the federal officials) action, the allegation of a vast conspiracy against him does not plausibly state a claim.

2

Similarly, Count Three alleges that, when Tompkins was arrested, "some officers" booked Tompkins with aliases in addition to his real name, thus supposedly violating one of the identity-theft criminal statutes, 18 U.S.C. § 1028(d)(5)(A). Once again, Tompkins cannot enforce that criminal statute in a civil action. The same goes for the next two claims: Count Four, which purports to allege a violation of 18 U.S.C. § 245 (interference with certain civil rights), and Count Five, which alleges that there was concealment of court records, 18 U.S.C. § 2071. Tompkins cannot prosecute those federal criminal statutes as civil actions.

Next, Count Six refers specifically to paragraphs 50 to 53 of the complaint, but those allegations, to the extent they are understandable, involve a refusal to rent to Tompkins after he raised complaints about the condition of the residence, and the allegations do not plausibly state a claim for race discrimination in the right to hold or lease property, 42 U.S.C. § 1982.

Count Seven refers specifically to paragraphs 97 to 100 of the complaint, which are allegations that two Lake County Circuit Court deputy clerks caused him to be arrested for allegedly making threats, once in 2007 and the other time in 2008. Whether regarded as a false-arrest or malicious-prosecution claim (or both), the latter case was dismissed in August 2008, so Tompkins's complaint, on its face, is outside the two-year statute of limitations. On the former case, the complaint does not allege that the prosecution was terminated in his favor, so that required allegation is missing.

Count Eight tries to allege that the "legal officials" had a chance to, but did not, prevent the "ongoing conspiracy." To the extent that this count is targeted at supervisory executive-branch officials, the allegations are too thin to state a claim for liability, because there are insufficient allegations of their personal involvement. *Ashcroft v. Iqbal,* 556 U.S. 662, 675-76, 681 (2009). Also, to the extent that this count is targeted at prosecutors (or the State's Attorney) for failing to prosecute the alleged wrongdoers or judges for failing to prevent the alleged abuse of process, absolute prosecutorial and judicial immunity apply to bar the claim.

Finally, Count Nine alleges that three prior lawsuits were incorrectly dismissed. To the extent that Tompkins is targeting state-court lawsuits, the *Rooker-Feldman* doctrine, narrow as it is, would apply if he is complaining about the judgments themselves. *See Crawford v. Countrywide Home Loans,* 647 F.3d 642, 645-46 (7th Cir. 2011). To the extent that the federal suit is the target, again the proper procedure would have been to appeal the dismissal, not file what amounts to a collateral challenge in a new civil suit. Whether state or federal, the complaint's allegations fail to provide factual content that amount to plausible challenges of the judges's decisions, and absolute judicial immunity would apply in any event.

This case is frivolous and fails to state a claim. The case is dismissed with prejudice.

ENTERED:


_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge

DATE: September 10, 2013

AO 450 (Rev. 01/09) Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

## Northern District of Illinois

| | |
|---|---|
| Wavery Thompkins | ) |
| Plaintiff | ) |
| v. | ) |
| 19th Judicial Circuit Cour of Lake County, Illinois, et al. | ) |
| Defendant | ) |

Civil Action No.          13 C 2515

### JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐ the plaintiff *(name)* _____ recover from the

defendant *(name)* _____ the amount of

_____ dollars ($ _____ ), which includes prejudgment

interest at the rate of _____ %, plus postjudgment interest at the rate of _____ %, along with costs.

☐ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)*
_____ recover costs from the plaintiff *(name)*

☒ other:
          This case is dismissed with prejudice for failure to state a claim.

This action was *(check one)*:

☐ tried by a jury with Judge _____ presiding, and the jury has rendered a verdict.

☐ tried by Judge _____ without a jury and the above decision was reached.

☐ decided by Judge _____ on a motion for

Date:          Sept. 13, 2013                    Thomas G. Bruton, Clerk of Court

                                        /s/ Sandra Brooks

CHAPTER 4

# Due Process and Criminal Rights

DUE PROCESS of law embodies a promise that government will deal fairly with the individual. In the twentieth century the Supreme Court read into that guarantee a wide range of rights, including those granted in other provisions of the Bill of Rights—guarantees until then applicable only against federal, not state, infringement.

Due process is primarily a guarantee of how the government must act, not of what it must do. It is difficult to overestimate the importance of procedure, noted Justice William O. Douglas, pointing out that most of the provisions of the Bill of Rights were procedural. "It is procedure," he wrote, "that spells much of the difference between rule by law and rule by whim or caprice. Steadfast adherence to strict procedural safeguards is our main assurance that there will be equal justice under law."[1]

Procedural rights are of great significance for persons charged with crimes. The Bill of Rights assures an individual accused of a crime fair treatment. Every criminal case is a legal contest between the individual and government. A crime is an offense against society. Government is society's agency to prosecute the offender, but it is an uneven match. The power of the individual defendant is no match for the power of government unless the individual has guarantees he or she will be treated fairly.

Procedural rights are not based on sentimental concern for criminals. The guarantees were not devised to coddle them or to provide technical loopholes through which dangerous persons can escape the consequences of their acts. "Due process of law is not, primarily, the right of the accused," David Fellman has written. "It is basically the community's assurance that prosecutors, judges and juries will behave properly, within rules distilled from long centuries of concrete experience."[2]

Although the procedural safeguards of the Bill of Rights are known primarily for their importance to persons suspected or accused of crime, they operate as well to shield all individuals against arbitrary, despotic, or unduly intrusive government action. They assure an individual charged with a crime notice of the charge against him, a speedy and public trial by an impartial jury, the opportunity to confront witnesses accusing him, and to compel witnesses in his favor to appear, and the aid of an attorney in preparing and presenting his defense.

Furthermore, these guarantees promise the individual that he will not be subjected to unreasonable search or arrest by government officials, compelled to incriminate himself, deprived of life, liberty, or property without due process of law, tried for a serious offense without being formally charged in an indict-

ment, tried twice for the same action by the same sovereign, subject to excessive bail or excessive fines, or sentenced to suffer cruel and unusual punishment.

Originally, these guarantees applied directly only to persons tried in federal courts, even though most persons charged with crimes in the United States are tried in state and local courts. But since 1868 the Fourteenth Amendment has guaranteed the individual due process and equal protection from state, as well as federal, authorities. Beginning in the 1930s, the Court has read those guarantees as extending most of the specific procedural protections of the Bill of Rights to persons tried in state courts.

The judicial expansion of due process reached its climax in the 1960s, but the revolutionary decisions of that time had roots. In the 1920s and 1930s the Court, under the leadership of successive chief justices, William Howard Taft and Charles Evans Hughes, began to apply the fundamental requirements of fair procedure to state trials, even while individual justices wrangled over whether the Fourteenth Amendment guarantee of due process so "incorporated" the Bill of Rights as to extend all its specific guarantees to defendants in state cases.

At first, the Court rejected any wholesale incorporation theory, preferring a more selective approach. The majority began developing a list of fundamental rights that states must honor: the right to legal counsel, the ban on cruel and unusual punishment, and the guarantee against unreasonable search and seizure.

The selective incorporation debate came to a dramatic end in the 1960s. In a series of rulings, the Court resoundingly rejected any idea that only a watered-down Bill of Rights applied to the states. The Court extended to state defendants the protection of the controversial exclusionary rule, the right to appointed counsel, the privilege against compelled self-incrimination, the right to confront prosecution witnesses, the right to a speedy trial, the right to a jury trial, and the protection against double jeopardy.

## EARLY VIEW

Early in its history, during the tenure of Chief Justice John Marshall, the Supreme Court held that the Bill of Rights limited only the federal government, not the states. In 1833 the Supreme Court set out this conclusion in Barron v. Baltimore, decided without dissent.[3]

With Marshall writing, the Court rejected the argument of a Baltimore wharf-owner that the Fifth Amendment guarantee of just compensation to persons whose private property was taken

167

for public use applied against all governments, not just the federal government. This was not the intent of the Bill of Rights, according to Marshall.

The Constitution was ordained and established by the people of the United States for themselves, for their own government, and not for the government of the individual States. . . . The powers they conferred on this government were to be exercised by itself; and the limitations on power, if expressed in general terms, are naturally, and, we think, necessarily applicable to the government created by the instrument.

. . . the provision in the fifth amendment to the Constitution, declaring that private property shall not be taken for public use without just compensation, is intended solely as a limitation on the exercise of power by the government of the United States, and is not applicable to the legislation of the States.[4]

## Congress and Due Process

Although the justices refused to extend the Fifth Amendment's guarantee of due process against state action, the Court in 1856 applied that guarantee to legislative action by Congress, making clear that all branches of the federal government were bound by it.

In *Murray's Lessee v. Hoboken Land and Improvement Company* the Court upheld an act of Congress authorizing the Treasury Department to issue warrants against the property of federal revenue collectors who were indebted to the federal government.[5] The law had been challenged as allowing the taking of property without due process. In the majority opinion by Justice Benjamin R. Curtis, the Court began its effort to define due process as any process that did not conflict with specific constitutional provisions or established judicial practices.

That the warrant now in question is legal process, is not denied. It was issued in conformity with an act of Congress. But is it "due process of law?" The Constitution contains no description of those processes which it was intended to allow or forbid. It does not even declare what principles are to be applied to ascertain whether it be due process. It is manifest that it was not left to the legislative power to enact any process which might be devised. The article is a restraint on the legislative as well as on the executive and judicial powers of the government, and cannot be so construed as to leave Congress free to make any process "due process of law," by its mere will. To what principles, then, are we to resort to ascertain whether this process enacted by Congress, be due process? To this the answer must be twofold. We must examine the Constitution itself, to see whether this process be in conflict with any of its provisions. If not found to be so, we must look to those settled usages and modes of proceeding existing in the common and statute law of England, before the emigration of our ancestors and which are shown not to have been unsuited to their civil and political condition by having been acted on by them after the settlement of this country.[6]

## Substantive Due Process

In 1868, twelve years after that ruling, the Fourteenth Amendment became part of the Constitution. It forbid the states to deprive any person of life, liberty, or property without due process of law.

Secondly, the due process guarantee was initially used with a great deal more effect to protect property than to protect life or liberty. This was the result of the development of the doctrine of

substantive due process—the view that the substance, as well as the procedures, of a law must comply with due process. (*See box, The Protection of Substantive Due Process*, pp. 296–297, in Chapter 5.)

In the midtwentieth century, Justice Robert H. Jackson compared the two types of due process:

Procedural due process is more elemental and less flexible than substantive due process. It yields less to the times, varies less with conditions, and defers much less to legislative judgment. Insofar as it is technical law, it must be a specialized responsibility within the competence of the judiciary on which they do not bend before political branches of the Government, as they should on matters of policy which comprise substantive law.[7]

## DUE PROCESS AND THE STATES

For sixty-five years after the Fourteenth Amendment was ratified, its due process clause provided little protection to persons tried in state and local courts.

In 1884 the Court held that due process did not require states to use indictments to charge persons with capital crimes, despite the Fifth Amendment provision requiring indictments in similar federal cases. In 1900 the Court held that the due process guarantee did not require states to use twelve-man juries. In 1908 the Court held that the Fifth Amendment privilege against compelled self-incrimination did not protect state defendants.

## Hurtado v. California

In the indictment case, *Hurtado v. California*, the Court upheld the murder conviction and death sentence of Joseph Hurtado, charged without an indictment.[8] He challenged his conviction, arguing that under Justice Curtis's definition of due process in *Hoboken*, he had been denied due process.

The Court's ruling, relaxing the earlier standard for the demands of due process upon state criminal procedures, blurred the *Hoboken* definition. Writing for the seven-justice majority, Justice Stanley Matthews redefined due process as "any legal proceeding enforced by public authority, whether sanctioned by age and custom, or newly devised in the discretion of the legislative power, in furtherance of the general public good, which regards, and preserves these principles of liberty and justice."[9]

However, "not every Act, legislative in form, . . . is law," Matthews explained:

Law is something more than mere will exerted as an act of power. It must be not a special rule for a particular person or a particular case, . . . thus excluding, as not due process of law, Acts of attainder, Bills of pains and penalties, Acts of confiscation, Acts reversing judgments, and Acts directly transferring one man's estate to another, legislative judgments and decrees, and other similar, special, partial and arbitrary exertions of power under the forms of legislation. Arbitrary power, enforcing its edicts to the injury of the persons and property of its subjects, is not law, whether manifested as the decree of a personal monarch or of an impersonal multitude.[10]

Adopting reasoning diametrically opposed to that of Justice Curtis in *Hoboken*, the majority ruled that because the Fifth Amendment expressly included *both* the indictment require-

# A Fair Trial

Anyone accused of a crime is constitutionally guaranteed a hearing on the charges against him, an opportunity to force the government to prove the charges, and a chance to present a rebuttal to that evidence.

In the 1920s the Supreme Court began to use the due process clause of the Fourteenth Amendment to require that states ensure that trials be held free of mob domination and be conducted before an impartial judge and a fairly chosen jury.

As early as 1915 the Court acknowledged that a trial could be so dominated by outside pressures that its outcome would deny the defendant due process. But the Court refused to intervene in the case of *Frank v. Mangum,* finding that the state in that instance provided the defendant sufficient opportunity through appellate review to win correction of this denial of his rights.[1]

Eight years later, however, the Court approved federal intervention to order the release of five black men convicted of murder in Arkansas and sentenced to die after a trial so dominated by racial tensions that it became a travesty of justice. Justice Oliver Wendell Holmes Jr. explained in *Moore v. Dempsey* that such intervention was necessary when "the case is that the whole proceeding is a mask—that counsel, jury, and judge were swept to the fatal end by an irresistible wave of public passion, and that the state courts failed to correct that wrong." At that point, he went on, "neither perfection in the machinery for correction nor the possibility that the trial court and counsel saw no other way of avoiding an immediate outbreak of the mob can prevent this court from securing to the petitioners their constitutional rights."[2]

Four years after *Moore* the Court in 1927 applied the due process clause to require that state and local trials be held before impartial judges without any personal stake in their outcome. In *Tumey v. Ohio* the Court held unconstitutional a system that permitted the presiding judge to take a portion of every fine he assessed against persons found guilty of violating the state's prohibition law.[3]

Writing for the Court, Chief Justice William Howard Taft declared:

All matters of judicial qualification may not involve constitutional validity. Thus matters of kinship, personal bias, state policy, remoteness of interest would seem to generally be matters merely of legislative discretion. . . . But it certainly violates the 14th Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case.[4]

The Court has emphasized that the judge's interest must be both personal and substantial to affect his or her impartiality. For example, in an Ohio town where the mayor-judge received a fixed salary for his duties, payment of half the fines to the town treasury did not violate due process of law, the Court ruled in 1928, limiting the effect of *Tumey.*[5]

In 1972, however, the Court ruled that persons charged with traffic offenses in another Ohio town were denied due process when the judge at their trial was the town mayor. The critical difference in this case was the fact that the fines collected from traffic violators provided a substantial portion of village revenues.

Justice William J. Brennan Jr. reasoned that although the mayor received no personal benefit or income from convictions, the "possible temptation" to convict "may . . . exist when the mayor's executive responsibilities for village finances may make him partisan to maintain the high level of contributions from the mayor's court."[6]

Although due process requires that a judge be impartial, it does not require that a judge be an attorney.

In *North v. Russell* (1976) the Court considered a due process challenge to Kentucky's two-tiered state court system under which small towns were permitted to employ nonlawyer judges for police courts. Such a court and a nonlawyer judge convicted Lonnie North for drunken driving. North challenged his conviction, claiming that it violated his right to due process. The Supreme Court rejected this argument and upheld the use of nonlawyer judges in cases involving minor offenses.

Chief Justice Warren E. Burger, speaking for five of the six members of the majority, wrote:

Our concern in prior cases with judicial functions being performed by nonjudicial officers has also been directed at the need for independent, neutral and detached judgment, not at legal training. . . .

We conclude that the Kentucky two-tier trial court system with lay judicial officers in the first tier in smaller cities and an appeal of right with a de novo trial before a traditionally law-trained judge in the second does not violate either the due process or equal protection guarantees of the Constitution of the United States.[7]

Justices Potter Stewart and Thurgood Marshall dissented. They found the use of nonlawyer judges a violation of the guarantees of due process and of the assistance of legal counsel.

## The Right to a Jury Trial

The system of trial by jury is a distinctive feature of the Anglo-American system of justice, dating back as far as the fourteenth century.

The men who wrote the Constitution included in Article III the flat requirement that "the Trial of all Crimes, except in Cases of Impeachment, shall be by Jury."

Not content with this single provision, those who drafted the Bill of Rights added additional guarantees of that right in the grand jury requirement of the Fifth Amendment, in the "speedy and public trial by an impartial jury" requirement of the Sixth Amendment, and in the Seventh Amendment requirement of jury trials in common-law suits involving more than $20.

This right has been the subject of many Supreme Court rul-

ings concerning the size, selection, and unanimity of juries, as well as a defendant's decision to waive the right to a jury trial, usually as a result of plea bargaining.

In federal cases, the Court has been unwavering in insisting that a jury in a criminal case must consist of twelve people and must reach a unanimous verdict. (In federal civil cases, however, juries may be as small as six members.)[8]

The Court in *Patton v. United States* explained that a jury trial "includes all the essential elements as they were recognized in this country and England when the Constitution was adopted."

Those elements were: 1) That the jury should consist of twelve men, neither more nor less; 2) that the trial should be in the presence and under the superintendence of a judge having power to instruct them as to the law and advise them in respect of the facts; and 3) that the verdict should be unanimous.[9]

## STATE TRIALS

Not until 1968, a full century after ratification of the Fourteenth Amendment and its due process clause, did the Court apply the right to trial by jury to the states.

In *Walker v. Sauvinet,* decided in 1876, the Court held that the Seventh Amendment right to trial by jury in civil cases was not a privilege or immunity of federal citizenship protected against state action.[10] Then in *Maxwell v. Dow* (1900) the Court ruled that neither the privileges and immunities clause of the Fourteenth Amendment nor the due process clause required that state juries consist of twelve persons. "Trial by jury has never been affirmed to be a necessary requisite of due process of law," declared the Court.[11]

With a line of decisions beginning in the 1930s, however, the Court made clear that *if* a state provided a trial by jury to a defendant, it was required to use fair procedures in selecting a jury that would represent a cross section of the community and would be relatively unbiased.

In 1968, the centennial of the adoption of the Fourteenth Amendment, the Court finally held that the right to trial by jury for persons charged with serious crimes applied to the states. In *Duncan v. Louisiana* the Court applied the Sixth Amendment right to a jury trial to the states as a necessary ingredient of due process.[12] The Sixth Amendment's guarantee is as follows:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

Gary Duncan, charged with battery in Louisiana courts, had been denied a jury trial; he was convicted and sentenced to a fine and two years in prison. Duncan appealed to the Supreme Court, arguing that this denial of a jury trial violated his right to due process.

The Court agreed. Justice Byron R. White wrote:

Because we believe that trial by jury is fundamental to the American scheme of justice, we hold that the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which—were they to be tried in a federal court—would come within the Sixth Amendment's guarantee.[13]

By applying the right to jury trial to the states the Court created two new questions. Were states now required to use only twelve-person juries? Must all state jury verdicts be unanimous?

### Small Juries

The answer to the first question came quickly—and it was no. In *Williams v. Florida,* decided in 1970, the Court held it proper for states to use juries composed of as few as six persons in noncapital cases.[14]

Johnny Williams was tried for robbery by a six-man jury, which Florida law allowed in all noncapital cases. Writing for the Court, Justice White acknowledged:

We do not pretend to be able to divine precisely what the word "jury" imported to the Framers, the First Congress, or the States in 1789. It may well be that the usual expectation was that the jury would consist of 12, and that hence, the most likely conclusion to be drawn is simply that little thought was actually given to the specific question we face today. But there is absolutely no indication in "the intent of the Framers" of an explicit decision to equate the constitutional and common law characteristics of the jury. Nothing in this history suggests, then, that we do violence to the letter of the Constitution by turning to other than purely historical considerations to determine which features of the jury system, as it existed at common law, were preserved in the Constitution. The relevant inquiry, as we see it, must be the function which the particular feature performs and its relation to the purposes of the jury trial. Measured by this standard, the 12-man requirement cannot be regarded as an indispensable component of the Sixth Amendment. . . .

. . . [T]he essential feature of a jury obviously lies in the interposition between the accused and his accuser of the common-sense judgment of a group of laymen, and in the community participation and shared responsibility which results from the group's determination of guilt or innocence. The performance of this role is not a function of the particular number of the body which makes up the jury. To be sure the number should probably be large enough to promote group deliberation, free from outside attempts at intimidation, and to provide a fair possibility for obtaining a representative cross section of the community. But we find little reason to think that these goals are in any meaningful sense less likely to be achieved when the jury numbers six, than when it numbers 12—particularly if the requirement of unanimity is retained. And, certainly the reliability of the jury as a factfinder hardly seems likely to be a function of its size.[15]

In 1978 the Supreme Court made plain that juries must consist of at least six persons, rejecting Georgia's use of a five-person jury.[16]

The same day the Court in *Williams* resolved the question of jury size, it answered another question: What crimes were serious enough to require states to provide a jury trial? In *Baldwin v. New York* the Court held that states must provide trial by jury for all persons charged with offenses that could be punished by more than six months in prison.[17]

## DUE PROCESS: THE RIGHT TO NOTICE

Formal notice of charges—or of legal proceedings affecting one's rights—is one of the essential elements of due process of law. All parties who are to become involved in legal proceedings must be informed in advance of trial of the specific charges against them to give them time to prepare their defense or, in the case of modern class action cases, to withdraw from the affected class.

In civil and criminal proceedings alike, notice must be given promptly and with sufficient specificity to permit preparation of an adequate defense. In addition, the Court has extended the due process requirement of notice to protect consumers from a unilateral seizure of property by creditors and to shield individuals from some administrative actions.

The concept of notice is included in both the Fifth and Sixth Amendments. The Fifth Amendment provides that no one "shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the militia." The Court in its 1884 ruling in *Hurtado v. California* held that this requirement of an indictment applied only to persons charged with federal crimes. That decision has never been reversed.[1]

The Sixth Amendment states that in *all* criminal prosecutions the defendant has the right "to be informed of the nature and cause of the accusation." This more general rule has been accepted as basic to a fair trial.

Both the Sixth Amendment and due process require that laws describing certain actions as criminal be sufficiently specific to place persons on notice as to what acts are proscribed. As the Court wrote in 1926, "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."[2]

Therefore, the Court has held "void for vagueness" laws that do not define with reasonable specificity the nature of forbidden conduct, and it has set aside indictments that are insufficiently precise in stating the charges against an individual.

In testing laws challenged as unconstitutionally vague, the Court balances the right to notice against the imprecise language and political considerations inherent in the process of writing laws. Justice Tom C. Clark in 1952 set out the Court's view of these factors:

A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.[3]

In later rulings, the Supreme Court extended the concept of notice, holding that it is required in a variety of situations outside of those occurring in the enforcement of the criminal law.

In 1969 and 1972 the Court held that due process required that consumers be notified before their wages were garnished or property repossessed for nonpayment of debts.[4]

The Court in 1970 applied the notice requirement to termination of welfare benefits.[5] Two years later it held that a teacher fired after ten years of service was entitled to notice and a hearing.[6] And in 1975 the Court held that students were entitled to notice of charges before they were suspended from public schools for misbehavior.[7]

1. *Hurtado v. California*, 110 U.S. 516 (1884).
2. *Connally v. General Construction Co.*, 269 U.S. 385 at 391 (1926).
3. *Boyce Motor Lines Inc. v. United States*, 342 U.S. 337 at 340 (1952).
4. *Sniadach v. Family Finance Corp. et al.*, 395 U.S. 337 (1969); *Fuentes v. Shevin*, 407 U.S. 62 (1972).
5. *Goldberg v. Kelly*, 397 U.S. 254 (1970).
6. *Perry v. Sinderman*, 408 U.S. 593 (1972).
7. *Goss v. Lopez*, 419 U.S. 565 (1975).

---

not only violates our Constitution and the laws enacted under it but is at war with our basic concepts of a democratic society and a representative government."[22]

Three decades later the Court reiterated this point, holding that state laws were unconstitutional if they resulted in the exclusion of women from juries. In these rulings the Court reaffirmed the fair cross-section requirement as fundamental to the right to a jury trial.[23]

Congress incorporated this principle into the Federal Jury Selection and Service Act of 1968, which—a century after adoption of the Fourteenth Amendment—forbade discrimination in the selection of jury panels based on race, color, religion, sex, national origin, or economic status.[24]



### Racial Bias

Racial discrimination in jury selection has been the subject of Supreme Court rulings for more than one hundred years. Both the due process and the equal protection guarantees of the Fourteenth Amendment furnish a basis for federal courts to review state jury selection practices alleged to be discriminatory. Most often the equal protection clause has served as the more effective of the two provisions in this area.

In 1880 the Court struck down Virginia and West Virginia laws that excluded blacks from jury service.[25] But the Court made clear in another decision the same year that it would not require state officials to ensure that blacks actually did serve on juries.[26] In other words, the mere absence of black jurors from

CONSTITUTIONAL AMENDMENT VIOLATION

# FindLaw. FOR LEGAL PROFESSIONALS

## Police Misconduct and Civil Rights Law

### By *John J. Davis* of <u>Pierce, Davis & Perritano, LLP</u>

Claims of police misconduct brought against law enforcement officials must be analyzed from both a factual and legal perspective. This analysis will necessarily involve a three-step process. First, the counsel for the defendant must identify and understand the claimant's theory of recovery as against his client--<u>i.e.</u>, what must the claimant establish in order to recover in an action at law? Second, counsel must consider available defenses. Is the defendant immune from liability to the claimant and, if so, under what circumstances? Finally, if the defendant is not immune from liability, what relief is the claimant entitled to recover? Simultaneously with the performance of this analysis, the defense counsel must also take steps to develop whatever information and documentation may be necessary to defeat the claim, to support all available defenses, and to minimize or avoid any relief sought by the claimant.

The following is intended as a "checklist" to guide the defense attorney through the analytical process:

I. CLAIMANT'S THEORY
    A. <u>Was The Claimant Deprived Of A Constitutional Or Federally-Protected Right</u>

        1. Constitutional Rights

            a. **First Amendment** (protects freedom of religion, free speech, freedom of the press and the right to peaceably assemble)

            <u>Examples:</u>

            Denial of permit to march, leaflet or speak in a public place--

                <u>Glasson v. City of Louisville</u>, 518 F.2d 899 (6th Cir.), <u>cert. denied</u>, 423 U.S. 930 (1975).

            Arrest of speaker at political rally --

                <u>Kay v. N.H. Dem. Party</u>, 821 F.2d 31 (1st Cir. 1987).

            Harassment of religious organization --

Nashua Valley Christian Fellowship, Inc. v. Town of Ayer, 623 F. Supp. 542 (D. Mass. 1985).

Ejection of citizen from public meeting --

Hansen v. Bennett, 948 F.2d 397 (7th Cir. 1991), cert. denied, 112 S.Ct. 1939 (1992).

  b. **Fourth Amendment** (protects right to be free from unreasonable searches and seizures; provides that warrants shall issue only upon probable cause, supported by oath or affirmation)

Examples:

False arrest --

Posr v. Doherty, 944 F.2d 91 (2d Cir. 1991).

False imprisonment or illegal detention --

Eberle v. City of Anaheim, 901 F.2d 814 (9th Cir. 1990).

Warrantless search --

Tyree v. Keane, 400 Mass. 1 (1987).

Warrantless arrest --

Fields v. City of S. Houston, 922 F.2d 1183 (5th Cir. 1991).

Failure to timely release pretrial detainee --

Brown v. Coughlin, 704 F. Supp. 41 (S.D.N.Y. 1989).

Apprehension of suspect by use of deadly force --

Tennessee v. Garner, 105 S.Ct. 1694 (1985).

Apprehension of suspect with excessive force --

Graham v. Connor, 109 S.Ct. 1865 (1989).

Police pursuit --

Horta v. Sullivan, 4 F.3d 2 (1st Cir. 1993).

c. **Sixth Amendment** (protects right to an attorney in criminal

proceedings)

Example:

Information garnered from surreptitious monitoring of conversations with attorney used to prejudice claimant's defense in criminal trial --

> Weatherford v. Bursey, 429 U.S. 545 (1977);
> St. Clair v. Schriber, 916 F.2d 1109 (6th Cir. 1990).



d. **Eighth Amendment** (prohibits cruel and unusual punishment)

Examples:

Inmate assaulted by guards --

> Whitley v. Albers, 475 U.S. 312 (1986).

Inmate assaulted by fellow inmates --

> Davidson v. Cannon, 474 U.S. 344 (1986);
> Berry v. City of Muskogee, Okla., 900 F.2d 1489 (10th Cir. 1990).

Inmate denied certain privileges, such as visitation, practice of religious beliefs, access to legal materials, mail, etc. --

> Sowell v. Vose, 941 F.2d 32 (1st Cir. 1991).

Inattention to medical needs of inmate --

> Estelle v. Gamble, 429 U.S. 97 (1976);
> Sires v. Berman, 834 F.2d 9 (1st Cir. 1987).

Suicide of inmate --

> Rogers v. Evans, 792 F.2d 1052 (11th Cir. 1986).



e. **Fourteenth Amendment** (a person's rights to life, liberty or property shall not be deprived without due process of law, nor shall any person be denied equal protection of the laws)

Examples:

Punishment of pretrial detainee --

> Redman v. County of San Diego, 942 F.2d 1435 (9th Cir.), cert. denied, 112 S.Ct. 972 (1991).

4. **Fourteenth Amendment**

A claimant may recover for a denial of procedural due process upon a
showing that the defendant intentionally denied that process to which the
claimant was constitutionally due.

A claimant may recover for a substantive due process violation upon proof
that the defendant acted recklessly or with callous indifference to the
claimant's rights. Recovery, however, will only be permitted for a truly
horrendous abuse of governmental power. Mere negligence, gross
negligence or bad faith will not be sufficient. Finally, deliberate conduct that
"shocks the conscience" or "offends the community's sense of fair play and
decency" will support a substantive due process claim without proof of the
specific liberty or property interest purportedly violated.

In the context of a pretrial detainee denied medical attention, the defendant
may be held liable upon a showing of deliberate indifference or proof that
the defendant's conduct was grossly negligent or so reckless as to be
tantamount to a desire to inflict harm.

In order to recover under the Equal Protection Clause, a claimant must allege
and prove "purposeful discrimination."

C. Did The Defendant Act Under Color Of State Law?

In order to recover under 42 U.S.C. §1983, the challenged conduct must be
committed "under color of law." This means that the defendant must have acted in
an official, government capacity, clothed with the authority of the state, in order to
be held liable. Miga v. City of Holyoke, 398 Mass. 343 (1986). Since cities and
towns derive their authority from the state, local government actors are deemed to
act "under color of law" whenever they commit acts within their official capacity.

1. Unlawful Conduct

A police officer acts "under color of law," even if he violates state or local
law, provided he acted within the apparent scope of his authority and office.

Monroe v. Pape, 365 U.S. 167 (1961).

2. Private Action

Acts committed in pursuit of personal interests are not "under color of law."

Cronin v. Town of Amesbury, 895 F. Supp. 375 (D. Mass.), aff'd, 81
F.3d 257 (1st Cir. 1995);
Bonsignore v. City of New York, 683 F.2d 635 (2d Cir. 1982).

Share   Report Abuse   Next Blog»                    Create Blog   Sign In

# Corruption within the Cc
# makes "Fraud upon the (

Monday, September 19, 2011

## Corruption within the Court, as "Fraud upon the Court" makes "Void"

My Brief Complaint Summary

As "Fraud upon the Court", makes "Void"

On Violations - Denial of Rights, under title 18 U.S.C. Part 1,Chapter 13,Sec.242, 245,and title 42 U.S.C.Sec.1983; as follows,-

On Statement of Facts, Finding of facts, on Evidence, and on Material of Facts that pertains to my Brief Complaint Summary – Petition for Damages on Violations of my Civil Rights, under Conclusion of Law:

 Under title 18 U.S.C. > Part 1, > Chapter 13, > Sec.242, On Violations - Denial of Rights; Whoever, any person from any State,Territory, Commonwealth, Possession, or District to the subjects of any person of any rights, privileges, or immunities secured, or protected by our Constitution of laws of the United States, or also two different punishments, as pains, penalties, on account of such person or by reason prescribed on violations of a citizen, shall be fined or imprisoned or both, by these acts committed under this title. As Federal Law also provides that it is a crime to violate the Constitutional Rights of a citizen under Color of Law and also have found that ignorance is no excuse.

 Under title 18 U.S.C. > Part 1, > Chapter 13, > Sec. 245, On Violations - Denial of Rights; as of Deprivation of Rights under Color of Law, as Federal Law provides, that Whoever acting or not acting under color of law,intimidates or interferes with any person from in participating in or

...ption within the Court, makes "Fraud upon the Court": Corruption within the Court, ...Page 2 of 18

enjoying any benefits, service, privilege, program, facility, or activity provided or administered by the United States; {or} applying for or enjoying employment, or any perquisite thereof, by any agency of the United States; shall be fined under this title.

Under title 42 U.S.C. sec. 1983; On Violations - Denial of Rights; Any Party Injured or other Proceedings,is called for redress under Color of Law, as Federal Law, provides that every person who, under color of any law or statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Colombia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, secured, by or immunities the Constitution and laws, shall be liable to party injured in any action at law, suit in equity, or other proper proceedings for redress.

Denial of Rights, as Deprivation of Benefits, under title 18 U.S.C. sec.246; and US Code Sec.246; on Violations - Denial of Rights, as Deprivation of Relief of Benefits. Whoever, directly or indirectly deprives, attempts to deprive,or threatens to deprive any person of any employment, position, work,compensation, or other benefits provided for or made possible in whole or in part by any Act of congress appropriating funds for work relief or relief purposes, on account of political affiliation, race, color, sex,religion, or national origin, shall be fined under this title,or imprisoned not more than one year, or both. And as follows, -

The minute you received any "lawful action", affidavit, it is in fact recorded. Our one Supreme Court, which is now styled as Superior Court (Court of Records) was created by the constitutional September 17th 1787, and is not to be confused with the United States Supreme Court crated on 1789.The judgment is of the People's Court of Record: "The judgment of a court of record whose jurisdiction is final, as conclusive an all the world as judgment of this court would be. It is as conclusive on this court as is on other courts. It puts an end to inquiry concerning the facts, deciding it.

(Obstructing of justice statues) on Federal Crime Reporting Statues:

Under title 18 U.S.C. Sec. 4, on Violations – Denial of Rights as states, as it's a Federal offense, of failure to disclose a felony, if couple with some act to concealing the felony, such as suppression of evidence, harboring or protecting the person performing the felony, intimidation or harming a witness, or any other act designed to conceal from authorities the fact that a crime has been committed. Whoever, having knowledge of an actual commission of a felony as cognizable by court of the United States, Conceals Evidence, and does not as soon as possible make known the same to some judge,or person pertaining to authority, or government officials as part of the judge's Mandatory Administrative Duties, and receives any offer of information,is a federal crime,and as blocking a report, that block is a felony, and falls under ("Obstructing Justice Statues")and constitutes as a serious offense, under this activity.

As, Whoever, whether or not,is acting under color of law.(As "Fraud upon the Court"
makes "Void")on all Orders and Judgments of that Court.

As a judge is an Officer of the Court, as well as all Attorneys.Due to the fraud evolved in my
case, "by both the Judges and attorneys", as it does say, they are "officers of the court", as
they also committed fraud within the court, as this is "Fraud upon the Court", as a judge is not
the court.People vs. Zajic 88 III p.3d, 477,410 N.E.2d 626(1980)as it does say,whenever any
officer of the court commits fraud during a proceeding in court, he/she is engaged in fraud
upon the court. It is where the court or a member is corrupted or influenced or influence is
attempted, or where the judge has not performed his judicial function...thus where the
impartial functions of the court have been directly corrupted. "Fraud upon the court" In Bulloch
v. United States, 763 F.2d 1115, 1121,(10th Cir.1985),the court states "Fraud upon the court"
is fraud which is directed to the judicial machinery itself and is not fraud between the parties or
fraudulent documents, false statements or perjury.....It is where the court or a member is
corrupted or influenced is attempts or where the judge has not performed his judicial
function.…thus where the impartial functions of the court have been directly corrupted." "Fraud
upon the court" has been defined by the 7th Circuit Court of Appeals to "embrace that species
of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers
of the court so that the judicial machinery cannot perform in the usual manner its impartial task
of adjudging cases that are presented for adjudications". Kenner v. C.I.R., 387 F.3d 689
(1968); 7 Moore's Federal Practice, 2d ed. p.512,60.23. The 7th Circuit further stated "a
decision produced by fraud upon the court is not in essence a decision at all, and never
becomes final." As it states, "Fraud upon the court" makes "VOID" the orders and judgments
of that court. As, all orders and judgments of that court are void. It is also clear and well-
settled Illinois law that any attempt to commit "fraud upon the court" vitiates the entire
proceeding. The People of the State of Illinois v. Fred E. Sterling, 357 III. 354; 192 N.E. 229,
(1934)"The maxim that fraud vitiates every transaction into which it enters applies to
judgments as well as contracts and other transactions.")Allen F. Moore v. Stanley F.
Sievers,336 III. 316; 168 N.E. 259 (1929),("The maxim that fraud vitiates every transaction
into which it enters..."); in re-Village of Willow-brook, 37 III. App. 2d 393 (1962),(It is axiomatic
that fraud vitiates everything."); Dunham v. Dunham 57 III App. 475 (1894)affirmed 162 III.
589. (1896); Shelly Oil Co., v. Universal Oil Products Co., 338 III, App. 79, 86 N.E. 2d 875,
883-4(1949); Thomas Tassel v. The American Home Security Corporation, 362 III. 350; 199
N.E. 798 (1935), Under Illinois and Federal law, As Federal law requires the automatic
disqualification of Federal judges under certain circumstances. In 1994, the U.S. Supreme
Court held that "Disqualification is required if an objective observer would entertain reasonable
questions about the judge's impartiality. As it states,if the judge's attitude or state of mind
leads a detached observer to conclude that a fair and impartial hearing is unlikely,the judge
must be disqualified".{Emphasis added}, Likely v. U.S.,114 S. Ct.1147,1162(1994). And
states, Courts have repeatedly held that positive proof of the partiality of a judge is not a
requirement, only the appearance of partiality. Liljeberg v. Health Services Acquisition Corp.,

486 U.S. 847, 108 S. Ct. 2194 (1988),(what matters is not the reality of bias or prejudice but its appearance); United States v. Balistrieri, 779 F. 2d 1191 (7th Cir. 1985) **The Supreme Court had ruled and reaffirmed the principle that "justice must satisfy the appearance of justice"**, Levine v. United States 362 U.S. 610, 80 S. Ct. 1038 (1960), citing Offutt v. United States, 348 U.S. 11, 14,75 S. Ct. 11, 13 (1954). A judge receiving a bribe from an interested party over which he is presiding, does not give the appearance of justice. Under Section 455 is self-executing; a party need not file affidavits in support of refusal and the judge is obligated to rescues herself sue pone, under the stated circumstance. Taylor v. O'Grady,888 F 2d 1189 (7th Cir. 1989); Further, the judge has a legal duty to disqualify himself even if there is no motion asked for his disqualification. The Seventh Circuit Court of Appeals further stated that "We think that this language (455(a) imposes a duty on the judge to act sue pone even if no motion or affidavit is filed." Balistrieri,at 1202, And as follows, -

As I, Michelle M. Christensen have also brought forth and have provided this information herein, an facts as proving wrong doing regarding wrongful acts, that were also being committed as I addressed this cause with Attorney's, Judges, the Fraud Division, and the Florida Bar Association (ACAP), on Evidence, Statements of Facts, an Material of Facts, as addressing this letter, Brief Complaint Summary, as addressing this document and other documents, to prove criminal intent acts, that were also being done under fraudulent intent acts, as commit fraud and perjury against me, may have also been committed by those evolved in this case. Starting from January 28, 1998 up through 2005, and addressed in 2006, 2007, by those evolved in this case. And on violations of having knowledge of those wrongful acts, as concealing those acts, and blocking those acts, by blocking me from having a hearing, as defrauding me of funds, as committed theft and perjury against me, that the judges and attorneys,along with government officials, pertaining to them in this case. As, ("Obstructing of Justice Statues") as this is also a serious offense, as addressing these matters or other issues regarding this case. As they are also committing intrinsic fraud and extrinsic fraud against me.

On violations under title 18 U.S.C., Sec. 2, as Principals. (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. (b) Whoever willfully causes an act to be done which if directly performed by him or another would by an offense, against the United States, is punishable as principal. Note: The legislative intent to punish as a principal not only one who directly commits an office and one who "aids, abets, counsels, commands, induces or procures" another to commit an office, but also anyone who causes the doing of an act which if done by him directly would render him guilty of an offense against the United States. Case Law decision: Rothenberg v. United States, 1918, 38 S. Ct. 18, 245 U.S. 480, 62 L. Ed.

On violations denial of rights, under title 42 U.S.C.> Chapter 1> Sec.1961-(A) as

("OBSTRUCTING JUSTICE STATUES") and title 18 U.S.C. 1503, as (obstructing of justice statues); whoever willfully endeavors by means of bribery to obstruct, delay, or prevent the communications of information of information relating to a violation of any criminal statue of the United States by any person as canceling an investigation of those acts.

On violations denial of rights, under title 18 U.S. C. > Sec. 1505; Whoever, corruptly... influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due proper administration of the law under which any pending proceeding is being had before any department or agencies of the United States ...shall be fined not more than $5,000 or imprisoned not more than five years or both.

On Violations denial of rights under title 18 U.S.C. > Part 1 > Chapter 101 >Sec. 2071-(a)-(b), as concealment, removal, or mutilation generally, (a) Whoever, willfully and unlawfully conceals, removes, mutilates, obliterates, or destroys, or attempts to do so, or with intent to do so takes and carries away any record, document, paper, or other thing, filed, (b) Whoever, having the custody of any such record, proceeding, book, document, paper, or other thing, willfully and unlawfully conceals, removes, mutilates, obliterates, falsifies, or destroys the same, shall be fined under this titled; and shall forfeit his office and be disqualified from holding any office under the United States. And as fallows, -

On violations denial of rights, under title 18 U.S.C. > Part 1 > Chapter 101 > Sec. 2075; as a, Officer failing to make returns or reports, Every Officer who neglects or refuses to make any return or report which he is required to make at state times by any Act of Congress or regulation of the Department of the Treasury, other than his accounts, within the time prescribed by such Act or regulation shall be find under this title. And on title 18 U.S.C.>2076, as Clerk of United States District Court, Whoever, being a clerk of a district court of the United States, willfully refuses or neglects to make or forward any report, certificate, statement, or document as requested by law, shall by fined under this title or imprisoned not more than one year, or both.

On violations Denial of Rights, under Statues at Large Sec. 4503; title LXX---Crimes---CH. 4, Crimes against Justice, (Destroying &c, public records.), SEC. 5403. Every person who willfully destroys or attempts to destroy, or, with intent to steal or destroy, takes and carries any record, paper, or proceeding of a court of justice, filled or deposited with any clerk or officer of such court, or any paper, or document, or record filed or deposited in any public office, or with any judicial or public office, shall, without reference to the record, paper, document, or proceeding so taken, pay fine of not more than two thousand dollars, or suffer imprisonment, at hard labor, not more than three years, or both: {See >5408, 5411, 5412.1}.

03/23/05

As I, Michelle M. Christensen, had accepted your oath to your lawful office. Should you refuse to file and record (My) "lawful actions", affidavits, etc…once deposited with you, you are committing a crime against justice under Statues at Large Sec. 5403-(Destroying Records) and it is punishable, by up to a $2000 dollar fine and 3 years imprisonment. If you're told not to file any documents like mine, you are still responsible, as I, do not accept any third party intervenes. Any attorney, district attorney, or anyone from the law-erring craft are all third parties and do not have a license to make a legal determination in this matter as they do not represent Me and you, and the clerks, do not have the authority to represent Me. In fact, had you filed my "Lawful Actions" my documents, which includes a Default Judgment in the Court of Record, you would have stopped the ongoing injuries, damages. Please forward your oath and bond information, as you are in fact libelous. In fact all filings are free and without charge. Crandall v. State of Nevada, 73 U.S. 35. And as follows,-

Whereas, I, Michelle M. Christensen, elected official of Florida, do hereby Demand for Petition for Redress of Grievances, for Obstructing Justice under Color of Law, as Requesting for Resolution to be addressed for an investigation as addressing this cause an Violations of Violating my Civil Rights, under the Constitution, and Bill of Rights, under title 42 U.S.C.>1961 chapter-(1), as "racketeering activities" under RICO Statues. And also under title 18 U.S.C. > Part 1 > Chapter 101 >Sec. 2075, as making False Claims, False Statements, Misleading Evidence, Withholding Evidence, Tampering with Evidence, Committing Perjury, Committing Forgery, Committing Theft, Insurance Fraud, Medical Fraud, Mail Fraud, Obstruction of Justice, Subornation of Perjury, and Conspiracy to Defraud the United States to Violations under RICO Statues, State–Violations of 42 U.S.C.>1961 chapter-(1) as Any Act, or Threat involving….relating to title U.S.C.>1503 as of ("obstruction of justice").

On Violations of title 18 U.S.C.>1505 as Whoever corruptly …influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due the proper administration of the law under which any pending proceeding is being had before any department or agency of the United States….shall be fined not more than $5,000 or imprisoned not more than five years, or both. As retaliating against me on violations of stopping me from addressing this claim as moving forward pertaining to my legal rights as addressing this claim with authorities on violations who address the law.

On Violation of, title 18 U.S.C.>1512 (b)Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to, -
(1)Influence or induce any person to, -
(2) Cause or induce any person to, -
(A)Withhold testimony, or withholding a record, document, or other object, from an official

proceeding;

(3)Hinder, delay, or prevent the communication to law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense...shall be fined under this title or imprisoned not more than ten years, or both.

On Violations of Title 18 U.S.C. > Chapter-4, title 18 U.S.C.> 5403 as stopping me from having a hearing, and Title 18 U.S.C.>1513 (a) (1), retaliated against me, when I informed the judge about bad faith going on in the courtroom, as addressing these statues as principals under Title 18 U.S.C.>2 – Principals. (b), under Subornation of Perjury Violations of title18 U.S.C.>1622, and Violations of Rights as Due Process –Violations of 18 U.S. C.>1513 and title 18 U.S.C.>1503, RICO; as fallows,-

A person who, with intent to deter a witness from testifying freely, fully, and truthfully to any matter pending in any court, in any administrative proceedings, or before a grand jury, communicates directly, or indirectly to such witness any threat of injury or damage to the person, property, or employment of the witness or to the person, property, or employment of any relative or associate of the witness or who offers or delivers any benefits, reward, or consideration to such witness or to a relative or associate of the witness shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years. As follows,-

(a)(b)(1), it shall be unlawful for any person knowingly to use intimidation, physical force, or threats; in regards to persuade another person by means of corruption or to attempt to do so; or to engage in or misleading conduct toward another person with intent to:
(A) Influence, delay, or prevent the testimony of any person in an official proceeding;
(B) Cause or induce any person to:
(I) Withhold testimony or a record, document, or other object from an official proceeding;
(II) Alter, destroy, mutilates, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding is a violation under these statues. As follows, -

On "Evidence on Facts as Fraud upon the Court"; under title 18 > Part 1 > Chapter 101 > Sec. 2071-(a)-(b), Concealing evidence, Sec. 2075 as officer of the court, Sec. 2076 as clerks of the court, Statues at Large Sec. 5403 (Destroying Public Record); Title LXX.---Crimes.---CH. 4 Crimes against Justice. *(TRAFFIC CASE 18 USC 2071, 2075, 2076 # 08 150 847)*

A (Court of Record), Our Superior Court, this judgment is of the People's (Court of Record) & (Public Record.), Statues at Large, Sec. 5403, Title LXX---Crime---CH. 4. (Destroying, &c, Public Records), Every person who willfully destroys or attempts to destroy, or, with intent to steal or destroy, takes and carries away any record, paper, or proceeding of court of justice, filled or deposited with any clerk or officer of such court, or any paper, or document, or record, filed or deposited in any public office, or with any judicial or public officer, shall, without,